The **EXPORT GROUP; Emilio Figueroa; Jack Andrews, Plaintiffs–Appellants,**

v.

**REEF INDUSTRIES, INC., Defendant,**

and

**Mexican Coffee Institute, Defendant–Appellee.**

No. 93–56022.

United States Court of Appeals, Ninth Circuit.

Submitted Feb. 10, 1995[*].

Decided May 22, 1995.

---

* The panel unanimously find this case suitable for decision without oral argument. Fed.R.App.P. 34(a) and Ninth Circuit Rule 34–4.

Emilio Figueroa, Irvine, CA, and Jack Andrews, Salt Lake City, UT, pro se for plaintiffs-appellants.

Charles M. Grant, Shearman & Sterling, Los Angeles, CA, for defendant-appellee Mexican Coffee Institute.

Before: BROWNING, D.W. NELSON, and HAWKINS, Circuit Judges.

D.W. NELSON, Circuit Judge:

Plaintiffs-appellants Emilio Figueroa, Jack Andrews, and The Export Group (collectively "Export Group") appeal from the district court's grant of relief from a default judgment it had entered against defendant-appellee, the Mexican Coffee Institute or Instituto Mexicano del Cafe ("INMECAFE"), in Export Group's diversity action alleging, *inter alia*, interference with contract rights. The district court granted INMECAFE's motion to set aside the default judgment on the ground that the judgment was void, Fed. R.Civ.P. 60(b)(4), because the district court concluded that it lacked subject matter jurisdiction over the interference with contract rights claim under the Foreign Sovereign Immunity Act ("FSIA"), 28 U.S.C. § 1602 *et seq.* We have jurisdiction, 28 U.S.C. § 1291, and we reverse and remand.

## FACTUAL AND PROCEDURAL BACKGROUND

█ Because of the procedural posture of this case, the parties have not litigated the facts, which are disputed. Nevertheless, in deciding whether the district court appropriately determined that it lacked subject matter jurisdiction, we accept the facts alleged in the complaint as true. *Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 706 (9th Cir.1992) (citing *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1513 (9th Cir.1987)), *cert. denied,* —— U.S. ——, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); *Gregorian v. Izvestia,* 871 F.2d 1515, 1528 (9th Cir.) (stating that "[w]e do not here resolve [a] dispute over the jurisdictional facts"), *cert. denied,* 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989).

The Export Group is a general partnership [1] engaged in international trade, specializing in representing North American companies on an exclusive basis in the sale of commercial and industrial products to agencies of the Mexican government. In October 1981, the Export Group reached an agreement with a commercial supplier, Reef Industries ("Reef"), whereby the Export Group would serve as Reef's exclusive representative in bidding on a contract from a Mexican government agency, Almacenes Nacionales De Desposito, S.A. ("ANDSA"), for 400 tarpaulins to cover grain storage bins. While the Export Group's bid to sell the Reef tarps was under consideration by ANDSA, a corrupt ANDSA employee named Alicia Martinez divulged the details of the Export Group's bid to Javier Mora, then the international director of INMECAFE, as part of an alleged conspiracy to prepare a competing bid. Mora, acting as an authorized agent of INMECAFE, submitted a bid to sell Reef tarps to ANDSA under another company's name, NEUERO. As a result, ANDSA awarded the contract to NEUERO, and the Export Group suffered a loss of approximately two million dollars in profits anticipated from its exclusive representation agreement with Reef.

The Export Group filed suit against NEUERO and Reef in Orange County Superior Court on June 24, 1983. Asserting diversity jurisdiction, defendants removed the action to the district court for the Central District of California. On November 19, 1984, the Export Group filed its first amended complaint adding INMECAFE, ANDSA, Martinez, and Mora as defendants and alleging causes of action for interference with prospective business advantage, interference

---

1. Following the withdrawal of the Export Group's counsel of record, this court permitted plaintiffs-appellants Emilio Figueroa and Jack Andrews to proceed pro se to represent their individual interests in the partnership.

with business and contractual relations, negligent interference with prospective business advantage, inducing breach of contract, and conspiracy. After INMECAFE, ANDSA, and Martinez failed to respond to personal service, defaults were entered against them on May 22, 1985. On September 5, 1986, the Consul of the United Mexican States filed a motion on behalf of INMECAFE to set aside the latter's default based on lack of personal service and lack of subject matter jurisdiction, under the FSIA, over an instrumentality of the Mexican Government. The district court denied the motion on April 21, 1987.

After the Export Group settled its claims against defendants Mora, NEUERO, ANDSA and Reef, these defendants were dismissed. On May 5, 1991, the Export Group applied for default judgments against INMECAFE and Martinez, and these judgments were entered on July 8, 1991, awarding the Export Group $2,032,795.49 plus costs. On June 4, 1991, INMECAFE filed a motion to set aside the default judgment on the grounds that the judgment was obtained through fraud, misrepresentation, or misconduct. See Fed.R.Civ.P. 60(b)(3). Alternatively, INMECAFE claimed that the judgment was void, see Fed.R.Civ.P. 60(b)(4), because the district court lacked subject matter jurisdiction under the FSIA. After oral argument, the district court granted INMECAFE's motion to set aside the default judgment previously entered as void, on the grounds that "this court lacks subject matter jurisdiction pursuant to the Foreign Sovereign Immunity Act, 28 U.S.C. § 1605(a)(5)(B)." Accordingly, the district court, sua sponte, dismissed the action as to INMECAFE. The Export Group timely appealed from the district court's final judgment.

### DISCUSSION

#### I. *Standard of Review*

■ Ordinarily, motions for relief from judgment pursuant to Federal Rules of Civil

Procedure 60(b) are addressed to the sound discretion of the district court and will not be reversed absent some abuse of discretion. *In re Roxford Foods, Inc.*, 12 F.3d 875, 879 (9th Cir.1993). We review de novo, however, a district court's ruling upon a Rule 60(b)(4) motion to set aside a judgment as void, because the question of the validity of a judgment is a legal one. *Retail Clerks Union Joint Pension Trust v. Freedom Food Center, Inc.*, 938 F.2d 136, 137 (9th Cir.1991). Furthermore, the existence of subject matter jurisdiction under the FSIA is a question of law subject to de novo review. *In re Estate of Ferdinand Marcos, Human Rights Litigation*, 25 F.3d 1467, 1470 (9th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 879 (1995); *Siderman de Blake*, 965 F.2d at 706.

#### II. *The Foreign Sovereign Immunity Act*

##### A. *The Structure and Language of the Act*

■ The FSIA, codified at 28 U.S.C. § 1330(a),[2] provides the "sole basis" for federal jurisdiction over the Export Group's claims against INMECAFE. *Argentine Republic v. Amerada Hess Shipping Corp.*, 488 U.S. 428, 433–35 & n. 3, 109 S.Ct. 683, 687–89 & n. 3, 102 L.Ed.2d 818 (1989); *Verlinden B.V. v. Central Bank of Nigeria*, 461 U.S. 480, 489, 493, 103 S.Ct. 1962, 1971, 76 L.Ed.2d 81 (1983). The FSIA creates a statutory presumption that a foreign state and its instrumentalities are immune from suit unless one of the specific exceptions enumerated in sections 1605 through 1607 of the Act applies. 28 U.S.C. § 1604. The Export Group claims that subject matter jurisdiction over their claim of interference with contract rights is conferred by the "commercial activity" exception to foreign sovereign immunity codified at 28 U.S.C. § 1605(a)(2). Section 1605(a) provides in relevant part:

2. Section 1330(a) creates in the district courts original jurisdiction without regard to amount in controversy of any nonjury civil action against a foreign state as defined in section 1603(a) of this title as to any claim for relief in personam with respect to which the foreign state is not entitled to immunity either under sections 1605–1607 of this title or under any applicable international agreement.
28 U.S.C. § 1330(a). For purposes of this section, a "foreign state" is defined as including "an agency or instrumentality of a foreign state." 28 U.S.C. § 1603(a).

A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States *in any case—*

(2) in which the action is based

[i] upon a commercial activity carried on in the United States by the foreign state; or

[ii] upon an act performed in the United States in connection with a commercial activity of the foreign state elsewhere; or

[iii] upon an act outside the territory of the United States in connection with a commercial activity of the foreign state elsewhere and that act causes a direct effect in the United States * * *

28 U.S.C. § 1605(a)(2) (emphasis added). Elsewhere, the FSIA defines "commercial activity" as follows:

A "commercial activity" means either a regular course of commercial conduct or a particular commercial transaction or act. The commercial character of an activity shall be determined by reference to the nature of the course of conduct or particular transaction or act, rather than by reference to its purpose.

28 U.S.C. § 1603(d). The fifth exception to the general grant of sovereign immunity in section 1605 reads:

A foreign state shall not be immune from the jurisdiction of the courts of the United States or of the States in any case— ...

(5) *not otherwise encompassed in paragraph (2) above,* in which money damages are sought against a foreign state for personal injury or death, or damage to or loss of property, occurring in the United States and caused by the tortious act or omission of that foreign state or of any official or employee of that foreign state while acting within the scope of his office or employment; except *this paragraph* shall not apply to— ...

(B) any claim arising out of malicious prosecution, abuse of process, libel, slander, misrepresentation, deceit, or interference with contract rights.

28 U.S.C. § 1605(a) (emphases added).

In granting INMECAFE's motion to set aside the default judgment, the district court ruled that the exceptions to the waiver of sovereign immunity contained in section 1605(a)(5)(B) are not limited to the "noncommercial torts" exception of that "paragraph," but extend to restore sovereign immunity for any such tort claims, even if committed in the course of a "commercial activity" as defined in section 1605(a)(2). Thus, even though INMECAFE's acts that form the basis of the Export Group's complaint were "commercial activities" under section 1605(a)(2), the court ruled that they were entitled to sovereign immunity under section 1605(a)(5)(B).

### B. *Is INMECAFE an Agency of the Mexican Government?*

Export Group argues on appeal that INMECAFE is not an "agency or instrumentality" of the Mexican government and therefore cannot avail itself of sovereign immunity under 28 U.S.C. § 1603(b). This is a novel position for the Export Group to take on appeal, since it repeatedly and consistently argued below that INMECAFE was "an agency or representative of the Mexican Government."

■ INMECAFE bears the burden of proof to establish its entitlement to sovereign immunity under the FSIA before the burden shifts to the plaintiff to establish an exception. *Meadows v. Dominican Republic,* 817 F.2d 517, 522–23 (9th Cir.), *cert. denied,* 484 U.S. 976, 108 S.Ct. 486, 98 L.Ed.2d 485 (1987). INMECAFE met its burden in the district court by submitting official Mexican government documents and a sworn affidavit of INMECAFE's counsel that establish INMECAFE's authority under Mexican law to act as "a dependency of the [Mexican] Ministry of Agriculture and Cattle...." Moreover, the Export Group's pleadings below conceded this fact. *See American Commercial Barge Lines, Co., v. N.L.R.B.,* 758 F.2d 1109, 1104 n. 2 (6th Cir.1985) (stating that one party's burden of proof may be satisfied by admissions in the other party's pleadings).

■ The Export Group argues that it may contest this issue on appeal because this court has recognized that plaintiffs are not limited to the statutory basis for subject matter jurisdiction stated in their complaint. *Gerritsen v. de la Madrid Hurtado,* 819 F.2d 1511, 1515 (9th Cir.1987). Appellants misconstrue *Gerritsen,* which explicitly limits plaintiffs to the facts alleged in their complaint, but allows those facts to establish subject matter jurisdiction on some other statutory basis. *Id.* Here, however, the Export Group attempts to plead facts different from those in their complaint, without explanation for their failure to discover these facts earlier. *See International Union of Bricklayers & Allied Craftsman v. Martin Jaska, Inc.,* 752 F.2d 1401, 1404 (9th Cir.1985) (stating that before this court will address such an issue "the proponent must show exceptional circumstances why the issue was not raised below") (quotations and citations omitted). Accordingly, we refuse to consider the Export Group's newly asserted facts. *United States v. Elias,* 921 F.2d 870, 874 (9th Cir.1990) (stating that facts and documents not presented to the district court are not part of the record on appeal); *United States v. Patrin,* 575 F.2d 708, 712 (9th Cir.1978); *see also Gregorian v. Izvestia,* 871 F.2d 1515, 1528 (9th Cir.) (refusing to resolve factual dispute as to jurisdiction as a result of "facts" urged by plaintiff that were not pleaded in the plaintiff's complaint), *cert. denied,* 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989).

### C. The District Court's Interpretation of the FSIA

We must determine whether the district court erred in ruling that the exceptions to the waiver of sovereign immunity for "noncommercial torts" listed in section 1605(a)(5)(B) of the FSIA restrict the scope of the waiver of sovereign immunity for commercial activities established by section 1605(a)(2). Before addressing the merits of this issue, however, we must decide whether we are bound by a prior Ninth Circuit opinion upon which the district court relied in granting INMECAFE's Rule 60(b)(4) motion.

■ In a footnote in *Gregorian,* 871 F.2d at 1515, this court stated that "it is ... likely that Congress meant the clauses retaining immunity in section 1605(a)(5)(B) to deny jurisdiction over any claims alleging the torts listed." *Gregorian,* 871 F.2d at 1522 n. 4. INMECAFE relies upon this sentence, which suggests that all tort claims included in section 1605(a)(5)(B) are granted immunity whether committed by the foreign entity acting in an commercial or noncommercial capacity, as a holding of this court to which this panel is bound. *Cf. Branch v. Tunnell,* 14 F.3d 449, 456 (9th Cir.), *cert. denied,* — U.S. —, 114 S.Ct. 2704, 129 L.Ed.2d 832 (1994); *United States v. Gay,* 967 F.2d 322, 327 (9th Cir.), *cert. denied,* — U.S. —, 113 S.Ct. 359, 121 L.Ed.2d 272 (1992).

INMECAFE argues that the discussion in the *Gregorian* footnote constitutes an alternative ground for the court's decision. "[W]here a decision rest on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.,* 337 U.S. 535, 537, 69 S.Ct. 1235, 1236–37, 93 L.Ed. 1524 (1949) (quoted in *English v. United States,* 42 F.3d 473, 485 (9th Cir.1994)); *Russell v. Commissioner of Internal Revenue,* 678 F.2d 782, 785 n. 2 (9th Cir.1982). Although the district court in *Carnival Cruise Lines, Inc. v. Oy Wartsila AB,* 159 B.R. 984, 1001 (S.D.Fla.1993) found that the footnote in *Gregorian* was "an alternate and supporting ground for the holding ... and cannot be fairly cast as dicta,"[3] we conclude that the footnote is dictum.[4] *See*

---

3. Despite its characterization of the precedential weight of the footnote in *Gregorian,* the district court in *Carnival Cruise Lines* expressly rejected the substance of that footnote. *See* 159 B.R. at 1002 (stating that "[if the challenged activity is] commercial, there is no immunity.... Only if the activity is non-commercial need the plaintiff read further and beware that a foreign government may not be brought into an American

Court for [the torts listed in section 1605(a)(5)(B)]").

4. We acknowledge that it is often difficult to determine whether statements in a court's opinion constitute an alternative ground for the decision or merely dicta. *Compare Operating Engineers Pension Trust v. Charles Minor Equipment Rental, Inc.,* 766 F.2d 1301, 1304 (9th Cir.1985) (finding a previous court's statements provided

**1472**

*Black's Law Dictionary,* 454 (6th ed. 1990) (defining "dictum" as "an observation or remark . . . not necessarily involved in the case or essential to its determination").

■ *Gregorian* held that there was no applicable exception to sovereign immunity under the FSIA for Gregorian's libel claim because Izvestia's activities were not commercial activities as defined by section 1605(a)(2). *See Gregorian,* 871 F.2d at 1521 ("The *nature* of the Izvestia article . . . is clearly governmental."); *id.* at 1522 ("In conclusion, then, we hold that the activity . . . was governmental rather than commercial in nature for purposes of section 1605(a)(2) of the FSIA"). The footnote suggests that Gregorian's "trade libel" claim would fare no better because, given the court's holding that Izvestia's actions were not "commercial activities" as defined in section 1605(a)(2), the alleged tort of trade libel would be encompassed within the libel exception of section 1605(a)(5)(B). *Id.* at 1522 n. 4 (stating that the plaintiffs did "not seek an exception to immunity under section 1605(a)(5). Nor could plaintiffs have established subject matter jurisdiction for their [trade] libel claim under section 1605(a)(5)"). The statement in the footnote, that "it is far more likely" that Congress intended section 1605(a)(5)(B) to apply to all claims of libel, is therefore dictum, as it is offered only to explain why section 1605(a)(5)(B) would encompass the "trade libel" claim *if* plaintiffs had attempted to rely upon that section to establish jurisdiction. *See Black's Law Dictionary,* 454 (6th ed. 1990) (defining "dicta" as "[e]xpressions

in the court's opinion which go beyond the facts before the court"). Although there are statements in the footnote that suggest the interpretation of section 1605 that INME-CAFE urges,[5] these statements were not necessary to the decision and thus have no binding or precedential impact in the present case. *See Wainright v. Witt,* 469 U.S. 412, 422, 105 S.Ct. 844, 851, 83 L.Ed.2d 841 (1985); *Operating Engineers Pension Trust,* 766 F.2d at 1307 (Fletcher, J. dissenting); *see also United States v. Crawley,* 837 F.2d 291, 292–93 (7th Cir.1988) (explaining the reasons for rejecting a prior court's dictum).

This reading of *Gregorian* is buttressed by the fact that no case in this circuit has cited the contested footnote as binding precedent, and, in fact, subsequent cases have contradicted its interpretation of section 1605. *See, e.g., Siderman de Blake v. Republic of Argentina,* 965 F.2d 699, 710 (9th Cir.1992) (holding that the plaintiffs' claims for fraud and interference with business relationships are not subject to immunity because they "fall squarely within clause two of the commercial activity exception"), *cert. denied,* —— U.S. ——, 113 S.Ct. 1812, 123 L.Ed.2d 444 (1993); *Richmark Corp. v. Timber Falling Consultants, Inc.,* 937 F.2d 1444, 1446 & n. 1 (9th Cir.1991) (finding subject matter jurisdiction under the commercial activity exception over fraud claim), *cert. denied,* —— U.S. ——, 113 S.Ct. 295, 121 L.Ed.2d 219 (1992). If *Gregorian's* footnote were binding precedent, subsequent panels of this court would not have been able to find subject matter jurisdiction under the commercial activity ex-

---

an alternative ground for decision and thus were binding precedent), *amended,* 778 F.2d 538 (9th Cir.1985), *with id.* at 1305–07 (Fletcher, J., dissenting) (finding the same language to be dicta).

**5.** The entire footnote reads as follows:
FN4. Plaintiffs' "trade libel" argument was designed to establish jurisdiction under section 1605(a)(2); the trade libel argument does not seek an exception to immunity under section 1605(a)(5). Nor could plaintiffs have established subject matter jurisdiction for their libel claim under section 1605(a)(5). This is because, contrary to plaintiffs' contention, the bar against "libel" claims contained in section 1605(a)(5)(B) must be construed to include claims of "trade libel." As *amicus curiae* United States correctly points out, a contrary interpretation would yield nonsensical results.

Statement of Interest of the United States, at 15. For example, foreign sovereign immunity is expressly retained in section 1605(a)(5)(B) for claims of "interference with contract rights" as well as for libel claims. As the United States observes, contract rights cases will almost always involve commercial activity, and it would have been odd for Congress, without saying so clearly, to have retained immunity for such claims only in the unusual situation in which entirely non-commercial activity was involved. *Id.* at 15–16. We agree that it is far more likely that Congress meant the clauses retaining immunity in section 1605(a)(5)(B) to deny jurisdiction over any claims alleging the torts listed.
871 F.2d at 1522 n. 4.

ception over tort claims exempted in section 1650(a)(5)(B). *See FW/PBS, Inc. v. City of Dallas,* 493 U.S. 215, 231, 110 S.Ct. 596, 607–08, 107 L.Ed.2d 603 (1990) (stating that "federal courts are under an independent obligation to examine their own jurisdiction"); *Harris v. Provident Life & Accident Ins. Co.,* 26 F.3d 930, 932 (9th Cir.1994); *see also Operating Engineers Pension Trust,* 766 F.2d at 1307 (Fletcher, J. dissenting) (arguing that the fact that subsequent case law does not cite or follow contested statements supports finding that those statements are dicta). Thus, we are not bound by the dictum contained in *Gregorian* 's footnote. *See Webb v. Lewis,* 44 F.3d 1387, 1392 (9th Cir. 1994) (refusing to be bound by previous panel's dictum), cert. denied, — U.S. —, 115 S.Ct. 2002, 131 L.Ed.2d 1003 (1995); *In re U.S. Financial Securities Litigation,* 609 F.2d 411, 425 n. 43 (9th Cir.1979), *cert. denied,* 446 U.S. 929, 100 S.Ct. 1866, 64 L.Ed.2d 281 (1980).

### D. *Interpreting the FSIA*

#### (1) *The Statute's Plain Meaning*

We are not the first court to acknowledge the confusing nature of the language and structure of 28 U.S.C. § 1605. *See Saudi Arabia v. Nelson,* — U.S. —, —, 113 S.Ct. 1471, 1478, 123 L.Ed.2d 47 (1993) (criticizing the Act's inadequate definition of "commercial activity"); *United World Trade, Inc. v. Mangyshlakneft Oil Production Ass'n,* 33 F.3d 1232, 1237 (10th Cir.1994) (describing "direct effect" clause as "hopelessly ambiguous"), *cert. denied,* — U.S. —, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995); *Callejo v. Bancomer, S.A.,* 764 F.2d 1101, 1107 (5th Cir.1985); *Gregorian,* 658 F.Supp. at 1235. "Fully aware of this statutory complexity, we still have no choice but to 'begin with the language employed by Congress and the assumption that the ordinary meaning of that language accurately expresses the legislative purpose.' " *Metropolitan Life Ins. Co., v. Massachusetts,* 471 U.S. 724, 740, 105 S.Ct. 2380, 2389, 85 L.Ed.2d 728 (1985) (quoting *Park'n Fly, Inc. v. Dollar Park and Fly,*

*Inc.,* 469 U.S. 189, 194, 105 S.Ct. 658, 661, 83 L.Ed.2d 582 (1985)); *Straub v. A P Green, Inc.,* 38 F.3d 448, 452 (9th Cir.1994).

■■■ The clear statutory language of section 1605(a)(5) indicates that both this exception and the restrictions upon this exception are intended to apply only to torts "not otherwise encompassed in [section 1605(a)(2) ]." *Joseph v. Office of Consulate General of Nigeria,* 830 F.2d 1018, 1025 (9th Cir.1987), (stating that "[t]he tortious activity exception provides jurisdiction over tort actions not encompassed in the commercial activity exception"), *cert. denied,* 485 U.S. 905, 108 S.Ct. 1077, 99 L.Ed.2d 236 (1988); *McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 588 (9th Cir.1983), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984); *See also Argentine Republic v. Amerada Hess Shipping Corp.,* 488 U.S. 428, 439, 441, 109 S.Ct. 683, 691, 692, 102 L.Ed.2d 818 (1989) (referring to section 1605(a)(5) as the "noncommercial torts exception"); *Siderman de Blake,* 965 F.2d at 714 (same); *Schoenberg v. Exportadora de Sal, S.A. de C.V.,* 930 F.2d 777, 780, 782 (9th Cir.1991) (same); *see also* H.R.Rep. No. 1487, 94th Cong., 2d Sess. 20 (1976), *reprinted in* U.S.C.C.A.N. 6604, 6619 [hereinafter "House Report" with citations to U.S.C.C.A.N.] (classifying section 1605(a)(5) as "Noncommercial torts"). Similarly, the phrase that establishes the two sets of restrictions on the waiver of sovereign immunity established by section 1650(a)(5) (subsection (A) for discretionary functions and subsection (B) for enumerated torts) states that in those cases "*this paragraph* shall not apply." Thus, by its plain and unambiguous terms, section 1605(a)(5) limits the reach of those restrictions only to noncommercial torts.

■■■ Established canons of statutory construction state that "[g]enerally an exception is considered a limitation only upon the matter which directly precedes it." [6] and "exceptions are not to be implied. An exception cannot be created by construction." Norman J. Singer, 2A Sutherland Stat. Const. § 47.11

---

6. However, "if a contrary intent or meaning is *clearly indicated* [an exception] will operate as a general limitation on all provisions of the act."

Norman J. Singer, 2A Sutherland Stat. Const. § 47.11 (5th Ed.1992).

(5th ed. 1992). In addition, there is a presumption that Congress would not enumerate specific exemptions in section 1605(a)(5) but leave the exemptions in another section of the same statute to judicial identification. Henry C. Black, Handbook of the Construction and Interpretation of the Laws §§ 27, 32 (2d ed. West 1911); Sutherland, *supra* § 47.23 ("The force of the maxim ['expressio unius est exclusio alterius'] is strengthened where a thing is provided in one part of a statute and omitted in another.").

The district court in *Gregorian* looked to the Federal Torts Claims Act ("FTCA") to inform its interpretation that § 1605(a)(5)(B) applies to commercial activities.[7] Consistent application of that court's logic would require that clause section 1605(a)(5)(A), which restores sovereign immunity for "discretionary functions" of foreign state actors, would also apply beyond the clearly expressed limits of that subsection to a foreign state's commercial activities, since that clause is on an equal structural footing with section 1605(a)(5)(B). Thus, any commercial activity in which the foreign state actor engaged in a "discretionary function" would also be immune,[8] effectively rendering section 1605(a)(2) a hollow shell. *See Colautti v. Franklin,* 439 U.S. 379, 392, 99 S.Ct. 675, 684, 58 L.Ed.2d 596 (1979) (stating that "[it is an] elementary cannon of construction that a statute should not be interpreted so as to render one part inoperative."), *overruled in part on other grounds, Webster v. Reproductive Health Services,* 492 U.S. 490, 109 S.Ct. 3040, 106 L.Ed.2d 410 (1989). Thus, there is no compelling reason to construe the FSIA in a way that departs from the Act's plain language. *See* Sutherland, *supra,* § 47.11 (Supp.1995) (stating that only "where the construction of a statute would lead to a manifest contradiction of the apparent purpose of the statute, it is to be presumed that some exception or qualification was intended by the legislature").

### (2) Other Courts' Interpretations of the Statute

To date, the district court in *Gregorian* is the only court to rule that foreign states and their agents are immune from claims for torts listed in section 1605(a)(5)(B) when those claims arise from the foreign actor's commercial activities. *Gregorian v. Izvestia,* 658 F.Supp. 1224, 1234–35 (C.D.Cal.1987), *aff'd in part, rev'd in part,* 871 F.2d 1515 (9th Cir.), *cert. denied,* 493 U.S. 891, 110 S.Ct. 237, 107 L.Ed.2d 188 (1989). Neither the Supreme Court nor any circuit court has explicitly decided whether the exceptions listed in section 1605(a)(5)(B) restrict the "commercial activity" exceptions of section 1605(a)(2). *But see Letelier v. Republic of Chile,* 748 F.2d 790, 795 (2d Cir.1984) (construing statutory language of two clauses and finding that "[t]his language suggests that the commercial activity exception to jurisdictional immunity under (2) and the tort exception under (5) are mutually exclusive"), *cert. denied,* 471 U.S. 1125, 105 S.Ct. 2656, 86 L.Ed.2d 273 (1985); *Gilson v. Republic of Ireland,* 682 F.2d 1022, 1028 n. 27 (D.C.Cir. 1982) (stating as dictum that the exceptions in section 1605(a)(5)(B) do not limit section 1605(a)(2)). Every other court that has addressed this issue has construed the two clauses as mutually exclusive. *See Carnival Cruise Lines,* 159 B.R. at 1002; *Foremost–McKesson, Inc. v. Islamic Republic of Iran,* 759 F.Supp. 855, 859 (D.D.C.1991) (stating that "the clear language of the statute declares that section 1605(a)(5) does not apply to section 1605(a)(2)"); *Le Donne v. Gulf Air, Inc.,* 700 F.Supp. 1400, 1410–11 (E.D.Va. 1988) (expressly disagreeing with the district court's opinion in *Gregorian* and holding that "subsection (a)(5)(B) ... operates only where ... the foreign state's acts are governmental, not commercial"); *Tifa, Ltd. v. Republic of Ghana,* 692 F.Supp. 393, 404 (D.N.J.1988) ("Section 1605(a)(5) does not apply to cases ... which involve commercial activity encom-

---

7. *See infra* Section (4).

8. In fact, this is precisely the scope of immunity that the United States Government enjoys under the Federal Torts Claims Act ("FTCA"). *See* 28 U.S.C. § 2680(a) & (h) (1988). That Congress could not have intended this section to apply to

commercial activities of foreign states indicates the error in the *Gregorian* district court's logic of limiting foreign states' commercial activities to the same jurisdictional limitations the United States enjoys under the FTCA. *See infra* Section (4).

passed in section 1605(a)(2).”); *United Euram Corp. v. U.S.S.R.*, 461 F.Supp. 609, 612 (S.D.N.Y.1978) (same); *Yessenin–Volpin v. Novosti Press Agency*, 443 F.Supp. 849, 855 (S.D.N.Y.1978) (same).

Moreover, several courts, including this one, have addressed claims alleging the torts listed in section 1605(a)(5)(B) exclusively under the commercial activity exception, without mentioning the potential applicability of the noncommercial torts exemption. *See, e.g., United World Trade, Inc. v. Mangyshlakneft Oil Production Ass’n*, 33 F.3d 1232 (10th Cir.1994) (fraud and misrepresentation), *cert. denied*, —— U.S. ——, 115 S.Ct. 904, 130 L.Ed.2d 787 (1995); *General Elec. Capital Corp. v. Grossman*, 991 F.2d 1376 (8th Cir.1993) (fraud and misrepresentation); *Siderman de Blake*, 965 F.2d at 710 (fraud and interference with business relationships); *Richmark Corp.*, 937 F.2d at 1446 & n. 1 (fraud); *Gould, Inc. v. Pechiney Ugine Kuhlmann*, 853 F.2d 445, 447 (6th Cir.1988) (unfair competition, misappropriation of trade secrets, and interference with contractual relationship); *Gilson*, 682 F.2d at 1022 (dismissing claims for deceit and interference with contractual rights on statute of limitations grounds); *Maizus v. Weldor Trust Reg.*, 820 F.Supp. 101 (S.D.N.Y.1993) (fraud and negligent misrepresentation); *AMPAC Group Inc. v. Republic of Honduras*, 797 F.Supp. 973 (S.D.Fla.1992) (finding jurisdiction under section 1605(a)(2) for claims of fraud and misrepresentation); *L’Europeenne de Banque v. La Republica de Venezuela*, 700 F.Supp. 114 (S.D.N.Y.1988) (finding jurisdiction under section 1605(a)(2) for fraud claim); *Gibbons v. Udaras na Gaeltachta*, 549 F.Supp. 1094, 1115 & n. 11 (S.D.N.Y. 1982) (finding jurisdiction under section 1605(a)(2) for claims of fraud and interference with contractual relations). Thus, other courts have not found that section 1605(a)(5)(B) provides across-the-board immunity from these types of torts.

**(3)** *Legislative History*[9]

Reference to the statute’s “Findings and Declaration of Purpose” makes clear what Congress intended: “Under international law, states are not immune from the jurisdiction of foreign courts insofar as their commercial activities are concerned. . . .” 28 U.S.C. § 1602 (1988). Legislative history indicates that Congress intended to adopt

> the so-called restrictive theory of sovereign immunity; that is the sovereignty of foreign states should be “restricted” to cases involving acts of a foreign state which are sovereign or governmental in nature, as opposed to acts which are either commercial in nature or those which private persons normally perform. .

House Report, *supra*, at 6613; *see also Saudi Arabia v. Nelson*, —— U.S. ——, ——, 113 S.Ct. 1471, 1479, 123 L.Ed.2d 47 (1993) (citing legislative history to justify the rule that there is no immunity when the foreign state “acts in the manner of a private player within the market”) (internal quotations and citations omitted); *id.* at —— –—— n. 2, 113 S.Ct. at 1482–83 n. 2 (Kennedy, J., concurring in part and dissenting in part) (quoting legislative history, and stating that “[t]he purpose of the commercial exception [is] to prevent foreign states from taking refuge behind their sovereignty when they act as market participants”); *id.* at ——, 113 S.Ct. at 1489 (Stephens, J., dissenting) (stating that “when a foreign nation sheds its uniquely sovereign status and seeks out the benefits of the private marketplace, it must, like any private party, bear the burdens and responsibilities imposed by that marketplace”); *Republic of Argentina v. Weltover, Inc.*, 504 U.S. 607, 612–15, 112 S.Ct. 2160, 2165–66, 119 L.Ed.2d 394 (1992); *Amerada Hess Shipping*, 488 U.S. at 434 n. 1, 109 S.Ct. at 688 n. 1; *Verlinden B.V.*, 461 U.S. at 488, 103 S.Ct. at 1968; *Alfred Dunhill of London v. Republic of Cuba*, 425 U.S. 682, 703–04, 96 S.Ct. 1854, 1865–66, 48 L.Ed.2d 301 (1976); *In re Estate of Ferdinand Marcos, Human Rights*

---

9. Ordinarily, “resort to legislative history is not necessary when the language of the statute is unambiguous.” *Straub v. A P Green, Inc.*, 38 F.3d 448, 454 (9th Cir.1994) (citing *Brooker v. Desert Hospital Corp.*, 947 F.2d 412, 414 (9th Cir.1991)). Here, although INMECAFE’s proposed interpretation of the statute contradicts its plain language, it is nevertheless a plausible one. Therefore, “we consult the legislative history, to the extent it is of value, to aid in our interpretation.” *Straub*, 38 F.3d at 452.

*Litigation,* 25 F.3d 1467, 1472 (9th Cir.1994) (stating that the restrictive principle of sovereign immunity codified in the FSIA "limits the immunity of a foreign state to its inherently governmental or public acts but does not extend to suits based upon its commercial or private acts"), *cert. denied,* —— U.S. ——, 115 S.Ct. 934, 130 L.Ed.2d 879 (1995); *Siderman de Blake,* 965 F.2d at 705–06; *accord Commercial Bank of Kuwait v. Rafidain Bank,* 15 F.3d 238, 241 (2d Cir.1994) ("If the sovereign's activity is commercial in nature … then the jurisdictional nexus is met, no immunity attaches, and a district court has the authority to adjudicate disputes based on that activity."). It is consistent with the broader legislative intent of Congress, which is to hold foreign states accountable in United States courts for *all* acts committed in their capacity as market participants, to interpret the plain language of section 1605(a)(2) as not restricted by other clauses that establish separate and alternative exceptions to sovereign immunity applicable to actions of foreign states performed in a noncommercial capacity.

There is an even more explicit indication that Congress intended the "commercial activity" exception to encompass even those non-personal-injury tort claims from which foreign states acting as sovereigns are immune under section 1605(a)(5)(B). In its "Section-by-Section Analysis" of the Act, the House Report clarifies the meaning of section 1603(e), which defines "commercial activity carried on in the United States by a foreign state," the first of the three categories of "commercial activities" that is excepted from sovereign immunity in § 1605(a)(2). House Report, *supra,* at 6615. Among other examples listed, the report includes "import-export transactions involving sales to, or purchases from, concerns in the United States[;] *business torts occurring in the United States (cf.* § 1605(a)(5))." *Id.* (emphasis added). Congress could not have provided a more explicit and unequivocal indication of its intent to have all commercial activities, including those torts enumerated in section 1605(a)(5)(B), be exempt from sovereign immunity.

**(4)** *The Comparison Made by the District Court in* Gregorian *to the FTCA is Inapposite*

The district court in *Gregorian* reasoned that since the exceptions of section 1605(a)(5)(B) mirrored the exceptions of the FTCA, House Report, *supra,* at 6620, it was "unlikely that Congress wished to create a double standard under which foreign sovereigns could be sued in United States courts on tort claims, such as libel, for which the United States Government is immune." *Gregorian,* 658 F.Supp. at 1234. While this may have been true specifically of section 1605(a)(5), the analogy does not apply to commercial activities of foreign states, an exception to the general grant of sovereign immunity afforded by the FSIA which has no counterpart in the FTCA. *See* Joseph W. Dellapenna, Suing Foreign Governments and Their Corporations 193 (1988) (analyzing the structural differences between the FTCA and the FSIA).

■■■ Congress did not intend the FSIA to subject foreign states—acting *either* in their private or public (sovereign) capacity—to the same liability that the United States government faces in the United States courts. Rather, Congress intended to subject foreign states to the same treatment in United States courts that the United States government receives in *foreign* courts. *See* House Report, *supra,* at 6605, 6607–08 (stating that the "restrictive" principle of sovereign immunity "is regularly applied against the United States in suits against the U.S. Government in foreign courts"); *McKeel v. Islamic Republic of Iran,* 722 F.2d 582, 587 (9th Cir. 1983), *cert. denied,* 469 U.S. 880, 105 S.Ct. 243, 83 L.Ed.2d 182 (1984).

Moreover, Congress expressly acknowledged that international law does not extend immunity to the acts of any state that are not governmental or "public acts (jure imperii)." House Report, *supra,* at 6605; *see* Restatement (Third) of the Foreign Relations Law of the United States § 451 (1987) ("Under international law, a state or instrumentality is immune from the jurisdiction of the courts of another state, except with respect to claims arising out of activities of the kind that may be carried on by private persons") (cited in

*Saudi Arabia v. Nelson,* —— U.S. at ——, 113 S.Ct. at 1479)); *see also Nelson,* —— U.S. at ——, 113 S.Ct. at 1486 (Kennedy, J., concurring in part and dissenting in part) (distinguishing between the language of the FTCA and the FSIA).

Lastly, the legislative history squarely rebuts INMECAFE's argument that section 1605(a)(5)(B) restores sovereign immunity for all non-bodily injury tort claims whether or not they arise in the course of commercial activity.[10] In discussing the meaning and intended scope of "an act performed in the United States in connection with a commercial activity of the foreign state elsewhere," which is the second of three clauses within section 1605(a)(2), the House Report includes "a representation in the United States by an agent of a foreign state that leads to an action for restitution based on unjust enrichment; an act in the United States that violates U.S. securities laws or regulations; [and] the wrongful termination in the United States of an employee of the foreign state who has been employed in connection with a commercial activity carried on in some third country." House Report, *supra,* at 6617–18. These examples of "commercial activity" for which there is no sovereign immunity indicate Congress' intent that jurisdiction should not be limited to tort claims involving bodily injury, such as in traffic accidents.[11] Thus, the legislative history indicates that the commercial activity exception created in section 1605(a)(2) encompasses tortious activities for which immunity is retained in section 1605(a)(5)(B) for foreign states when acting in their noncommercial, sovereign capacity, as it is for the United States government under the FTCA.

## CONCLUSION

For the reasons discussed above, we find that the district court erred in ruling that the

exceptions to the "non-commercial torts" section of the FSIA, 28 U.S.C. § 1605(a)(5)(B), restore sovereign immunity to a foreign state's "commercial activities" under 28 U.S.C. § 1605(a)(2). Accordingly, we reverse the district court's order setting aside the default judgment on the ground that the court lacked subject matter jurisdiction over the Export Group's claim for interference with contract rights, and remand for further proceedings.[12]

REVERSED and REMANDED.

10. "The purpose of section 1605(a)(5) is to permit the victim of a traffic accident or other *noncommercial* tort to maintain an action against the foreign state to the extent otherwise provided by law." House Report, *supra,* at 6620 (emphasis added).

11. These examples also indicates quite clearly that Congress did not intend the commercial activity exception to be limited only to claims for breach of contract. Indeed, U.S. securities laws and regulations provide for private causes of

action based upon claims of fraud and misrepresentation. *See, e.g.,* 15 U.S.C. §§ 77k, 77l, 77q, 78j, 78r, 78z; Securities and Exchange Commission Rule 10b–5, 17 C.F.R. § 240.10b–5.

12. On remand, the district court should consider INMECAFE's motion for relief from judgment pursuant to Fed.R.Civ.P. 60(b)(3), upon which the district court expressly reserved ruling. We express no opinion on the merits of this claim.