**BEST LIFE ASSURANCE COMPANY OF CALIFORNIA, Petitioner–Appellee,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellant.**

No. 00–71082.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 3, 2001.

Filed Feb. 11, 2002.

Michael A. Clark, Robert N. Hochman, Sidley & Austin, Chicago, IL, for petitioner-appellee Best Life Assurance Company.

David I. Pincus, Robert W. Metzler, United States Department of Justice, Tax Division, Washington DC, for respondent-appellant Commissioner of Internal Revenue.

Before: BROWNING, REINHARDT, and TALLMAN, Circuit Judges.

## OPINION

TALLMAN, Circuit Judge.

The Commissioner of Internal Revenue challenges the Tax Court's determination that, because the term "unpaid losses" in Internal Revenue Code ("I.R.C." or "Code") § 816(c)(2) includes only unaccrued unpaid losses, taxpayer Best Life Assurance Company of California ("Best") qualifies as a life insurance company under § 816(a). A qualified life insurance company is entitled to special tax treatment under the Code. We have jurisdiction under I.R.C. § 7482(a)(1), and we affirm.

### I

Best is a California company that writes life insurance contracts and cancellable accident and health insurance contracts. States require insurance companies such as Best to maintain defined levels of solvency to assure the payment of future claims. In addition to their annual tax returns, in California these companies are required to file reports of their anticipated liabilities and reserves with the Insurance Department on Annual Statement Forms promulgated by the National Association of Insurance Commissioners ("NAIC"). In its present form, the Annual Statement characterizes reserves as claims for which the insurer will become liable in the future, i.e., unaccrued claims, and it characterizes liabilities as claims for which the insurer is presently liable, i.e., accrued claims.[1]

Special rules of taxation are applied to companies that are classified as life insurance companies under the Tax Code. Section 816(a) defines a "life insurance company" as an insurance company engaged in the business of issuing certain specified types of insurance if "(1) its life insurance reserves (as defined in [§ 816(b) ][2]), plus (2) unearned premiums and unpaid losses (whether or not ascertained), on noncancellable life, accident or health policies not included in life insurance reserves, comprise more than 50 percent of its total reserves (as defined in [§ 816(c) ])." 26 U.S.C. § 816(a) (2001). Section 816(c) defines total reserves as "(1) life insurance reserves, (2) unearned premiums, and unpaid losses (whether or not ascertained), not included in life insurance reserves, and (3) all other insurance reserves required

1. The use of the term "accrual" in the life insurance industry does not conform to the definition of that word under Generally Accepted Accounting Principles.

2. In pertinent part, § 816(b) defines "life insurance reserves" as:
 (1) In general.—For purposes of this part, the term "life insurance reserves" means amounts—
 (A) which are computed or estimated on the basis of recognized mortality or morbidity tables and assumed rates of interest, and
 (B) which are set aside to mature or liquidate, either by payment or reinsurance, future unaccrued claims arising from life insurance, annuity, and noncancellable accident and health insurance contracts (including life insurance or annuity contracts combined with noncancellable accident and health insurance) involving, at the time with respect to which the reserve is computed, life, accident, or health contingencies.
 26 U.S.C. § 816(b) (2001).

by law." 26 U.S.C. § 816(c) (2001).[3]

As used in the statute at issue, an unpaid loss can be described as an estimate of the insurance company's liability for claims arising out of injuries that have already occurred. Unpaid losses can be both accrued, for example where medical expenses from an injury have already been incurred, or unaccrued, for example where future expenses from that injury will be incurred but are not yet known.

On its 1991 and 1992 federal income tax returns, Best claimed that it was a life insurance company as defined in § 816(a). Best applied the § 816(a) formula to both its returns and its Annual Statement and determined that its ratio of qualifying reserves to total reserves exceeded 50% for both 1991 and 1992. In making this determination, Best excluded accrued unpaid losses from the "unpaid losses" portion of the denominator figure of the reserve ratio.

Based on its audit of Best's 1991 and 1992 returns, the Commissioner determined that Best had incorrectly computed the reserve ratio. The Commissioner stated that Best should not have excluded its accrued unpaid losses from the denominator of the qualification fraction. When these amounts were included, the ratio for both years dropped below 50%. Thus, the Commissioner determined that Best did not qualify as a life insurance company under the statute and asserted deficiencies in Best's income tax for 1991 and 1992.

The Tax Court agreed with Best. Relying heavily on the Seventh Circuit's decision in *Harco Holdings, Inc. v. United States*, 977 F.2d 1027 (7th Cir.1992), as well a prior Tax Court opinion, the court determined that "the term 'unpaid losses' has acquired a specialized meaning in the[life and accident and health insurance] industry that includes only ... unaccrued unpaid losses." The Tax Court further stated that it was not bound by our statements and analysis in *United States v. Occidental Life Ins. Co.*, 385 F.2d 1 (9th Cir.1967), since that decision did not "clearly establish a position on the meaning of the term 'unpaid losses' under current section 816 that signals to us an inevitable reversal upon appeal."

Based on the language and legislative history of the statute, we hold, in accordance with the decision of the Seventh Circuit in *Harco Holdings*, that the Tax Court correctly concluded that the term "unpaid losses" in § 816(c)(2) of the Internal Revenue Code, as understood in the life and accident and health insurance industry, includes only unaccrued unpaid losses.

## II

We review the Tax Court's construction of the tax code de novo. *See Leslie v. Commissioner*, 146 F.3d 643, 650(9th Cir.1998). Although we presume that the Tax Court correctly applied the law, we give no special deference to the Tax Court's decisions. *See Custom*

---

**3.** The reserve ratio or "qualifying fraction" for determining whether a company qualifies as a life insurance company for tax purposes is thus:

| Numerator | | Denominator |
|---|---|---|
| Life Insurance Reserves + | | Life Insurance Reserves + |
| Unearned Premiums and Unpaid | ÷ | Unearned Premiums and Unpaid |
| Losses on noncancellable life, accident, or health claims (not included in life insurance reserves) | | Losses (not included in life insurance reserves) + |
| | | All Other Reserves |

*Chrome, Inc. v. Commissioner*, 217 F.3d 1117, 1121 (9th Cir.2000).

Since 1921, companies classified as life insurance companies have been entitled to special tax treatment under the Code. The statutory test for defining life insurance companies as it existed in 1921 was similar to that in current § 816—it provided that an insurance company was a life insurance company if more than half of its total reserves were life insurance reserves. Revenue Act of 1921, ch. 136, 42 Stat. 227, § 242 (1921). However, because many of the key terms in this definition were left undefined, Congress amended that provision in 1942 in three significant ways. First, it provided a definition for "life insurance reserves." Second, it added "unpaid losses on noncancellable life, health, or accident policies" to "life insurance reserves" in the numerator of the reserve ratio. Finally, it provided a definition for total reserves, the denominator of the reserve ratio, which included unpaid losses. Revenue Act of 1942, Pub.L. No. 77–753, 56 Stat. 798, § 163(a) (1942).

 These provisions have been carried forward, substantially unchanged, into the current version of § 816. While these new provisions clarified the application of the reserve ratio, they failed to provide a definition of the term "unpaid losses" as used in the denominator of the ratio.

The first decision to address the scope of "unpaid losses" with reference to § 801, § 816's predecessor, was our decision in *United States v. Occidental Life Ins. Co.,*

385 F.2d 1(9th Cir.1967).[4] In *Occidental Life,* we were asked to define the scope of the term "unpaid losses" in the context of the now-repealed § 806. Specifically, we determined whether "accrued but unpaid liabilities" on non-life policies should be included in "unpaid losses" for purposes of computing an "adjustment for certain reserves" under § 806. *Id.* at 2. We said that we could not accept the view that "[r]eserves in the insurance sense means technical reserves"[5] because (1) the concept of technical reserves was developed in connection with another provision of the statute, (2) "later developments in the method of life insurance company taxation strengthen belief that this narrow interpretation is incorrect," and (3) changes made by the Revenue Act of 1942 showed that "Congress intended that 'unpaid losses,' as used in section 806, should include both unaccrued and accrued claims." *Id.* at 4–7.

We looked to § 801 to support our holding that "unpaid losses" encompassed more than merely technical reserves. *See id.* at 5. In doing so, we noted that "[a]lthough an examination of section 801 along these comparative lines is *not required* for a conclusion as to the meaning of 'unpaid losses' in section 806, our interpretation of section 801 is nevertheless *persuasive in support of the result which we reach.*" *Id.* at 5–6 (emphasis added). Based on our determination that the definition of "life insurance reserves" encompassed more than merely technical reserves, and that "most, if not all, unaccrued unpaid loss

---

**4.** Section 816's predecessor, § 801, was repealed and redesignated by the Deficit Reduction Act of 1984, Pub.L. No. 98–369, 98 Stat. 720, § 211(a) (1984). However, in making this change, the House of Representatives intended that "where provisions of existing law are incorporated in the bill ..., in the absence of contrary guidance in this report, the regulations, rulings, and case law under existing law may serve as interpretive guides to

the new provisions." H.R.Rep. No. 98–432, pt. 2, at 1401 (1984). Thus, cases interpreting former § 801 are instructive in interpreting the meaning of § 816.

**5.** Technical reserves include only unaccrued claims; they do not include accrued claims. *See Occidental Life,* 385 F.2d at 4.

claims would be included within the ... definition of life insurance reserves," we held that the term "unpaid losses" must include both accrued and unaccrued claims so as to not render § 801 superfluous. *Id.* at 6.

Nearly 30 years later, the Seventh Circuit in *Harco Holdings, Inc. v. United States,* 977 F.2d 1027 (7th Cir.1992), directly addressed the question of whether accrued unpaid losses are considered "unpaid losses" for purposes of § 801. Once again, the Commissioner in *Harco Holdings* argued, as here, that "unpaid losses" meant all unpaid losses, both accrued and unaccrued, while the taxpayer claimed that "unpaid losses" only included unaccrued unpaid losses. *Id.* at 1030. The Seventh Circuit sided with the taxpayer in holding that accrued unpaid losses are not included in "unpaid losses" for purposes of determining total reserves in the denominator of the reserve ratio. *See id.* at 1038.

The Seventh Circuit first recognized that while the plain language of § 801 did not differentiate between accrued and unaccrued unpaid losses, "context is important to explain the meaning of otherwise intelligible terms, especially when referring to a complicated and highly technical portion of the tax code." *Id.* at 1030. And it noted,"[i]t is well established that the technical provisions of section 801 (and its predecessors) were couched by Congress in language peculiar to the insurance industry and therefore intended to have the meaning generally attributed thereto by the experts." *Id.; see also Central Reserve Life Corp. v. Commissioner,* 113 T.C. 231, 237, 1999 WL 810557 (1999) ("Congress drafted subchapter L [in which § 816 is found] and its predecessors using the specialized language of the insurance industry, and Congress understood that language to have the technical meaning given to it by that industry.").

The Seventh Circuit then explained that the structure of the statute demonstrated that "unpaid losses" were "reserves" which did not include accrued unpaid losses. *See Harco Holdings,* 977 F.2d at 1030. It noted, " '[u]npaid losses' are part of the definition of 'total reserves' in section 801(c), and the term is followed by a clause that reads 'and all other insurance reserves required by law.' " *Id.* This determination, that "unpaid losses" were "reserves" that did not include accrued unpaid losses, was supported by the fact that the term "reserves" had acquired a precise meaning before 1942 that "included unaccrued unpaid losses and excluded accrued unpaid losses (which were 'liabilities')." *Id.* at 1031. For instance, our sister circuit noted that "[i]n a number of cases dealing with the deductibility of 'reserves,' courts had established that such reserves included only 'future, unaccrued and contingent amounts.' " *Id.* (citing *Commissioner v. Monarch Life Ins. Co.,* 114 F.2d 314, 325 (1st Cir.1940)). Therefore, "since the 'unpaid losses' to which the statute refers are 'reserves,' Congress probably used the phrase 'unpaid losses' to refer only to unaccrued unpaid losses." *Id.* at 1034.

The Seventh Circuit also looked to § 801's legislative history to support its holding: "The legislative history of the 1942 Act evinces a clear intent to expand the definition of life insurance company so that insurers who offered noncancelable accident and health insurance could qualify for the same favorable tax treatment as life insurance companies." *Id.* at 1037 (citing S.Rep. No. 77–1631 (1942), *reprinted in,* 1942–2 C.B. 504, 611–12). If "accrued unpaid losses are included in 'total reserves' ... some insurance companies that qualified as life insurers under the old statute would no longer qualify as life insurers under the new statute." *Id.* The

Seventh Circuit correctly concluded that "[t]he only reading of 'unpaid losses' that is consistent with the intent to expand the availability of favorable tax treatment is ... [that] accrued unpaid losses are not counted." *Id.* at 1037–38.

*Harco Holdings* distinguished our analysis in *Occidental Life* and provided several reasons for declining to follow it. The Seventh Circuit properly found that the discussion of § 801 in *Occidental Life* was "not a holding of the case," and thus was only potentially persuasive authority. *Id.* at 1036. Further, based on its determination that our discussion rested on a false premise, it decided that the analysis of § 801 in *Occidental Life* was not persuasive. *Id.*[6] Since *Harco Holdings* found that unaccrued unpaid losses are generally *not* included in "life insurance reserves," as opposed to our finding that they are almost always included, it concluded that "the provisions for 'unpaid losses' need not be superfluous, even if they include only unaccrued unpaid losses." *Id.*

In the last and most recent decision to take up this question, the Tax Court in *Central Reserve Life Corp. v. Commissioner,* 113 T.C. 231, 1999 WL 810557 (1999), agreed with the reasoning and conclusion of the Seventh Circuit in *Harco Holdings.* In reaching this conclusion, the Tax Court underscored the importance of "constru[ing] the subject text in light of its usage in the insurance industry, to the extent that it has an established meaning in that industry." *Id.* at 237. The Tax Court explained that "courts had held repeatedly before the 1942 Act that the word 'reserves' in the life and [accident and health] industry included unaccrued unpaid losses and, more importantly, that the meaning of the word did not include accrued unpaid losses." *Id.* at 244.

The Tax Court also concluded that because the life and accident and health insurance industry treated unaccrued unpaid losses as reserves, while it treated accrued unpaid losses as liabilities, "Congress meant for the term 'unpaid losses' to reach only those unpaid losses which are technical reserves ...; to wit, unaccrued unpaid losses." *Id.* at 241–42. In reaching this conclusion, the Tax Court found our decision in *Occidental Life* "unhelpful" in construing the term "unpaid losses" for purposes of § 816(c)(2) and noted that it considered our analysis of that term under former § 801 to be dicta. *Id.* at 242–43 & n. 6.

### III

■ The Commissioner contends that our analysis of § 801 in *Occidental Life* was an alternative holding, as opposed to dicta, and therefore the Tax Court erred in refusing to apply the rule of *Occidental Life* to the case at hand. "[I]t is often difficult to determine whether statements in a court's opinion constitute an alternative ground for the decision or merely

6. While we closely follow *Harco Holdings* in concluding that "unpaid losses" include only unaccrued unpaid losses, we believe that the Seventh Circuit's interpretation of the statute was flawed in one respect. *Harco Holdings* found *Occidental Life* unpersuasive in part because it contained a "logical flaw." *See* 977 F.2d at 1036 n. 14. *Harco Holdings* stated that "[i]f 'unpaid losses' means all unpaid losses, [as *Occidental Life* argued,] and 'life insurance reserves' includes unaccrued unpaid losses, then the statute counts unaccrued unpaid losses twice." *Id.* However, under the terms of the statute, only unpaid losses that are *not* included in "life insurance reserves" are counted as "unpaid losses" for purposes of total reserves. *See* 26 U.S.C. § 816(c)(2) (2001). Thus, such "double counting" would not occur. Nevertheless, our disagreement on this point does not affect the outcome in this case given that the language and structure of the statute, its legislative history, and the industry understanding of the relevant terms support our conclusion.

dicta." *Export Group v. Reef Indus., Inc.,* 54 F.3d 1466, 1472 n. 4 (9th Cir.1995). Black's Law Dictionary defines "obiter dictum" as a statement "made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive)." *Black's Law Dictionary* 1100(7th ed.1999). However, "where a decision rests on two or more grounds, none can be relegated to the category of obiter dictum." *Woods v. Interstate Realty Co.,* 337 U.S. 535, 537, 69 S.Ct. 1235, 93 L.Ed. 1524 (1949).

Our interpretation of § 801 in *Occidental Life* was dicta. In *Occidental Life,* our statements regarding the scope of § 801 were used to support our holding with regards to § 806—we did not make an alternative holding under § 801 itself. We clearly stated that "an examination of section 801 along these comparative lines is not required for a conclusion as to the meaning of 'unpaid losses' in section 806" and that our interpretation of § 801 was simply "persuasive in support of the result" which we reached with regard to § 806. *See Occidental Life,* 385 F.2d at 5–6; *see also Export Group,* 54 F.3d at 1472 (finding that where we analyzed a section of the statute other than that under which plaintiffs had brought their claims, "these statements were not necessary to the decision and thus have no binding or precedential impact"). Therefore, the Tax Court did not act in contravention of binding precedent in finding that the term "unpaid losses" in § 816 does not include accrued unpaid losses.

## IV

The legislative history and structure of the statute, the industry understanding of the relevant terms, and the decisions of the Seventh Circuit and the Tax Court support our conclusion that the term "unpaid losses" as used in the denominator of the reserve ratio was intended to include only unaccrued unpaid losses. As the Tax Court stated in *Central Reserve,* "courts had held repeatedly before the 1942 Act that the word 'reserves' in the life and [accident and health] industry included unaccrued unpaid losses and, more importantly, that the meaning of the word did not include accrued unpaid losses." *Central Reserve,* 113 T.C. at 244. Further, "[t]he legislative history of the 1942 Act evinces a clear intent to expand the definition of life insurance company so that insurers who offered noncancelable accident and health insurance could qualify for the same favorable tax treatment as life insurance companies." *Harco Holdings,* 977 F.2d at 1037(citing S.Rep. No. 77–1631, *reprinted in,* 1942–2 C.B. at 611–12).[7]

Thus, if accrued unpaid losses were included in "total reserves," some insurance companies that qualified as life insurers under the old statute would no longer qualify as life insurers under the new statute. Therefore, "[t]he only reading of 'unpaid losses' that is consistent with the intent to expand the availability of favorable tax treatment is the reading suggested by the Senate Report: ... accrued unpaid losses are not counted." *Id.* at 1037–38.

The Commissioner nonetheless contends that the Seventh Circuit, as well as the

---

**7.** The Senate Report explains the reason for this change:

Since noncancelable contracts of health and accident insurance require the accumulation of substantial reserves against increased future risks, the writing of such

insurance is analogous to life insurance and the definition has been changed to permit such companies to be taxed as life insurance companies.

S. Rep. No. 77–1631, *reprinted in,* 1942–2 C.B. at 611–12.

Tax Court in *Central Reserve*, erred in focusing on Annual Statements created after 1942 in determining that the life and accident and health insurance industry defines "reserves" as including only unaccrued unpaid losses. Section 811(a) of the current Code provides that all accounting computations under this portion of the Code "shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners." 26 U.S.C. § 811(a)(2001). This language suggests that these courts were not bound to interpret the version of the Annual Statement in existence at the time the relevant language was drafted. Indeed, the term "annual" itself demonstrates the propriety of looking to the statement in existence at the time the relevant conduct occurred.

Even if these courts erred in using Annual Statements created after 1942, they only looked to these documents for guidance as to how the industry defined these terms. *See, e.g., Harco Holdings*, 977 F.2d at 1033("The Annual Statement may not be definitive, but it is an authoritative interpretive guide to the meaning of the statute."). The courts' determinations as to the industry understanding of the term "unpaid losses" were supported by cases, decided prior to 1942, that stated that such reserves included only " 'future, unaccrued and contingent amounts.' " *See, e.g., id.* at 1031(quoting *Monarch Life Ins.*, 114 F.2d at 325).

The Commissioner also contends that the definition of "unpaid losses" in Treasury Regulation § 1.801–3(g) supports its position that unpaid losses includes all unpaid losses.[8] The Commissioner argues that "the lack of any mention of a distinction between 'accrued' and 'unaccrued' amounts [in the Regulation], when coupled with the sweeping language of the regulation, demonstrates that the distinction is not relevant in determining whether an item is an 'unpaid loss.' "

*Harco Holdings* rejected this very argument, noting that the purpose of the regulation was not to signal the difference between accrued and unaccrued losses, but rather to clarify that amounts "incurred but not reported" are included in unpaid losses. *See* 977 F.2d at 1034–35. As the Seventh Circuit correctly stated "[t]here is no indication [in the legislative history] that 'ascertained' unpaid losses are necessarily accrued losses, nor is there any indication that Congress had the distinction between accrued and unaccrued in mind." *Id.* at 1034.

The Commissioner further argues that since the regulation fails to use the term "reserves" in defining "unpaid losses," "unpaid losses" are not limited to technical reserves but can include both accrued and unaccrued claims. This argument is unavailing. First, as discussed above, "[i]t is well established that the technical provisions of section 801 (and its predecessors) were couched by Congress in language peculiar to the insurance industry and therefore intended to have the meaning

---

8. Treasury Regulation § 1.801–3(g) provides: The term "unpaid losses (whether or not ascertained)" means a reasonable estimate of the amount of the losses (based upon the facts in each case and the company's experience with similar cases): (1) Reported and ascertained by the end of the taxable year but where the amount of the loss has not been paid by the end of the taxable year, (2) Reported by the end of the taxable year but where the amount thereof has not been either ascertained or paid by the end of the taxable year, or (3) Which have occurred by the end of the taxable year but which have not been reported or paid by the end of the taxable year.

26 C.F.R. § 1.801–3(g) (2002).

generally attributed thereto by the experts." *Id.* at 1030; *see also Central Reserve*, 113 T.C. at 237(noting that Congress drafted § 816 and its predecessors "using the specialized language of the insurance industry, and Congress understood that language to have the technical meaning given to it by that industry"). Second, the placement of "unpaid losses" within the definition of "total reserves," followed by a sentence referring to all "other" reserves, demonstrates that "unpaid losses" are indeed reserves, regardless of whether they are referred to as such in the Treasury Regulations. Given that the structure of the statute demonstrates that "unpaid losses" in § 816(c)(2) are reserves, it is only logical that they could therefore only include unaccrued unpaid losses.

Finally, the Commissioner contends that both *Harco Holdings* and *Central Reserve* misconstrue our analysis of § 801 in *Occidental Life*. As discussed above, the Seventh Circuit concluded that our argument as to § 801 was not persuasive because it was based on a "false premise," that "most unaccrued unpaid losses would fit within the category of 'life insurance reserves.'" *See Harco Holdings*, 977 F.2d at 1036. According to *Harco Holdings*, "unaccrued unpaid losses are generally *not* included in 'life insurance reserves.'" *Id.* (emphasis added). While the Commissioner is correct in noting that some unaccrued unpaid losses could be included in "life insurance reserves" as defined in § 816(a), *see Monarch Ins.*, 114 F.2d at 322, the Seventh Circuit conceded as much in its opinion. *See Harco Holdings*, 977 F.2d at 1036 n. 15.[9]

Despite this discrepancy, *Harco Holdings'* conclusion that the provisions for "unpaid losses" are not superfluous, even if they do not include accrued unpaid losses, has merit. Even if only some unpaid losses are included in "life insurance reserves" under § 816(a)(2), the remaining unpaid losses not included in those reserves still fall under § 816(c)(2), demonstrating that this interpretation of § 816 does not render either provision superfluous.

## V

■ Based on the foregoing, we conclude that the term "un-paid losses" in § 816(c)(2) includes only unaccrued unpaid losses, and does not include accrued unpaid losses. The decision of the Tax Court is therefore **AFFIRMED**.

---

9. As we explained in Section III, *supra,* we are not bound by the discussion and interpretation of § 801 in *Occidental Life*.