**HARCO HOLDINGS, INC. and Subsidiaries, Plaintiffs,**

v.

**UNITED STATES of America, Defendant.**

**No. 89 C 3988.**

United States District Court, N.D. Illinois, E.D.

Dec. 21, 1990.

Richard Bromley, Glen H. Kanwit, Michael R. Schlessinger, Hopkins & Sutter, Chicago, Ill., for plaintiffs.

Gerald C. Miller, Dept. of Justice, Washington, D.C., for defendant.

## ORDER

NORGLE, District Judge.

Before the court is plaintiff Harco Holdings, Inc.'s ("Harco") motion for summary judgment. For the reasons discussed below, the motion is denied.

## FACTS [1]

On September 15, 1979, Harco filed a timely federal corporate income tax return for the taxable year ending on December 31, 1978. This filing consolidated the tax returns of Harco and three of its wholly-owned subsidiaries. Along with this filing, Harco submitted full payment of the $2,559,397 in taxes computed on the return.

On February 3, 1982, Harco timely filed with the IRS a refund claim for $790,794. In this refund claim, Harco asserted that one of the subsidiaries included in the September 15, 1979 tax return, Association Life Insurance Company, Inc. ("Association Life") qualified as a life insurance company for federal tax purposes for the 1978 taxable year. The parties agree that if Association Life so qualified, then both it and its wholly-owned subsidiary (Harco National Insurance Company), were each required to file separate federal income tax returns— and neither should have been included in the consolidated return filed by Harco in 1979. Had these companies filed separate tax returns, the combined total tax due from these returns, according to Harco, would have been $1,768,603, $790,794 lower than the tax actually paid by Harco.[2]

On May 19, 1987, the IRS issued a statutory notice of disallowance for Harco's $790,794 refund claim. Harco has not received any credit or refund for any amounts asserted in its refund claim. Harco filed this action on May 15, 1989 to obtain the refund which was disallowed by the IRS. It now moves for summary judgment.

---

1. The parties have stipulated to all facts relevant to this motion. *See* Stipulation of Material Facts, attached as Exhibit A to Plaintiff's Motion for Summary Judgment.

2. The government notes that it has not examined this portion of Harco's calculations. Thus, the $1,768,603 and $790,794 figures represent plaintiff's computations only.

## DISCUSSION

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment:

> shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Here, the parties agree that there is no genuine issue as to any material fact and that the dispute is limited to an interpretation of the applicable law. The sole question of law presented by this action is whether Association Life qualified as a life insurance company for federal income tax purposes in 1978. Section 801 of the Internal Revenue Code of 1954 (the "Code"), as in effect during 1978, defines "life insurance company" as follows:

§ 801. Definition of life insurance company

(a) Life insurance company defined.—For purposes of this subtitle, the term "life insurance company" means an insurance company which is engaged in the business of issuing life insurance and annuity contracts (either separately or combined with health and accident insurance), or noncancellable contracts of health and accident insurance, if—

(1) its life insurance reserves (as defined in subsection (b)), plus

(2) unearned premiums and unpaid losses (whether or not ascertained), on noncancellable life, health, or accident policies not included in life insurance reserves,

comprise more than 50% of its total reserves (as defined in subsection (c)).

\* \* \* \* \* \*

(c) Total reserves defined.—For the purposes of subsection (a), the term "total reserves" means—

(1) life insurance reserves,

(2) unearned premiums, and unpaid losses (whether or not ascertained), not included in life insurance reserves, and

(3) all other insurance reserves required by law.

26 U.S.C. § 801 (1978). The mathematical ratio used to define a life insurance company for the purposes of Section 801(a) of the Code is known as the "life insurance company qualification fraction" (the "qualification fraction").

The parties have stipulated that the appropriate calculation for the numerator of the ratio (the figure calculated by adding the amounts described in under 801(a)(1) and 801(a)(2)) is $4,237,361. The present dispute, therefore, is limited to the proper calculation for the denominator of the fraction—i.e., the figure calculated under 801(c).

Harco implicitly acknowledges that if, under 801(c)(2), it were to include all of Association Life's "unearned premiums, and unpaid losses (whether or not ascertained), not included in life insurance reserves," in its calculation of the 801(c) "total reserve" figure, the sum would be $10,-777,074. The resulting ratio ($4,237,361 divided by $10,777,074) would be 39.32%, not enough to qualify Association Life as a "life insurance company."

Harco argues, however, that the 801(c) does not require it to include all of Association Life's unpaid premiums and unpaid losses in the "total reserve" calculation. Specifically, it divides Association Life's unpaid losses on its cancellable accident and health ("non-life") policies into two categories: "(i) accrued liabilities, i.e., liabilities for medical services already received by policyholders at the end of the taxable year, and (ii) unaccrued liabilities, i.e. anticipated expenses for medical services not received by year-end but relating to insured events that have already occurred." Memorandum in Support of Plaintiff's Motion for Summary Judgment ("Memorandum in Support"), pp. 2–3. Harco contends that while the unaccrued portion of its unpaid losses are properly included under § 801(c)(2), the accrued portion of its unpaid losses are not.

The government, by contrast, contends that Association Life's accrued, as well as unaccrued, liabilities on cancellable non-life policies represent "unpaid losses" which fit

squarely under 801(c)(2). If, as Harco proposes, the accrued portion of Association Life's unpaid losses[3] are subtracted from the denominator of the qualification fraction, the denominator of the qualification fraction becomes $6,575,566 and the resulting ratio becomes 64.4%—enough to qualify Association Life as a "life insurance company."

Significantly, Harco cites no case law or other authority directly supporting its distinction between accrued and unaccrued "unpaid losses" under 801(c)(2).[4] Rather, Harco engages in an analysis of the term "reserves," as the term is used in the text and the history of the Code, and argues that "reserves" refers only to funds earmarked for contingent liabilities. Harco reasons that because a portion of Association Life's unpaid losses in 1978 reflected accrued (i.e., fixed) rather than contingent liabilities, these accrued unpaid losses were not "reserves" at all.[5]

Unlike Harco, the government provides substantial authority for its position. In support of its contention that the term "unpaid losses" in 801(c)(2) contemplates all unpaid losses, whether accrued or unaccrued, the government cites to the definition of the term in the Treasury Regulations. Section 1.801–3 of the Treasury Regulations (the "Regulations") state, in relevant part:

*Definitions*

For the purposes of part I, subchapter L, chapter 1 of the Code, this section defines the following terms, which are to be used in determining if a taxpayer is a life insurance company (as defined in section 801(a) and paragraph (b) of this section):

\*    \*    \*    \*    \*    \*

(g) *Unpaid losses* (whether or not ascertained). The term "unpaid losses (wheth-

er or not ascertained)" means a reasonable estimate of the amount of the losses (based upon the facts in each case and the company's experience with similar cases)—

(1) Reported and ascertained by the end of the taxable year but where the amount of the loss has not been paid by the end of the taxable year,

(2) Reported by the end of the taxable year but where the amount thereof has not been either ascertained or paid by the end of the taxable year, or

(3) Which have occurred by the end of the taxable year but which have not been reported or paid by the end of the taxable year.

26 C.F.R. 1.801–3 (1972). The government argues that the Regulations' definition of "unpaid losses" clearly contemplates the accrued liabilities which Harco seeks to exclude from its calculation of "total reserves" under 801(c). Certainly, Treasury Regulation 1.801–3(g)(1), which refers to losses which are both reported and ascertained, appears to contemplate accrued or fixed liabilities.

Harco, however, argues that losses which are ascertained and reported need not necessarily be deemed accrued. Reply Memorandum in Support of Plaintiff's Motion for Summary Judgment, p. 3. Harco cites disability insurance as an example of this point, arguing that a disability insurance liability which is fixed in amount (e.g., $300 per month) may nevertheless be unaccrued insofar as the liability is based on the contingency that the insured remains alive and disabled on the relevant date. *Id.* Harco takes the position that Congress and the Treasury intended for this fine distinction to be read into the Internal Revenue Code and the Regulations.

3. The parties stipulate that the amount of Association Life's accrued liabilities on cancellable accident and health policies for tax year 1978 was $4,201,508.

4. The court finds plaintiff's lack of authority particularly significant in light of the fact that the applicable provision of the Internal Revenue Code went into effect in 1954.

5. In support of its position, plaintiff also cites to several IRS private letter rulings. While ac-

knowledging that these private letter rulings may not be used for precedential value, plaintiff claims to cite them "solely to show that the Service is taking an inconsistent position here." Memorandum in Support, p. 11, n. 7. The government, in turn, argues that these private letter rulings are not only have no precedential value, but they are factually distinguishable from this case.

Despite Harco's assertions to the contrary, the court finds that neither Congress nor the Treasury intended to include the "accrued versus unaccrued" distinction in the Code or in the Regulations. The court notes that the relevant provisions of the Code and the Regulations do not contain the terms "accrued" or "unaccrued" or any comparable language. *See Time Insurance Co. v. Commissioner of Internal Revenue*, 86 T.C. 298, 319, 1986 WL 22091 (1986) (rejecting respondent's definition of the term 'unpaid losses' where such definition had not clearly been expressed by Congress in the Code, or by the Treasury in the regulations applicable thereto). Had Congress or the Treasury intended for this distinction to apply, they would have expressed this intention in the Code or in the applicable regulations.

Also in support of its position, the government cites to *United States v. Occidental Life Insurance Co. of California*, 385 F.2d 1 (9th Cir.1967), in which the Ninth Circuit discussed the meaning of the term "unpaid losses" as used in the Internal Revenue Code of 1954. Although the holding in this case focused on the use of the term in § 806 of the Code, the Ninth Circuit's discussion nevertheless expressly applied its reasoning to § 801. "Although an examination of section 801 along these comparative lines is not required for a conclusion as to the meaning of "unpaid losses" in section 806, our interpretation of section 801 is nevertheless persuasive in support of the result which we reach." *Occidental*, 385 F.2d at 5–6. In its discussion, the Ninth Circuit states that: "we believe that 'unpaid losses' were intended in section 801 to include all unpaid claims, both unaccrued and accrued. The language is clear, and the legislative history of the section supports this interpretation." *Id.* at 6.

The court finds Harco's efforts to circumvent the *Occidental* opinion unconvinc-

ing. Although the relevant language in the opinion is, as Harco suggests, dictum which is not entitled to "precedential weight," [6] it is nevertheless has persuasive value. The *Occidental* decision contains a detailed and well-reasoned analysis of § 801 and cites ample support for its position in both the plain language and legislative history of this provision.

## CONCLUSION

For the reasons discussed above, Harco has not established that it is entitled to judgment as a matter of law. Therefore, Harco's motion for summary judgment is denied. Having found for the government on the sole legal issue in controversy, the court grants summary judgment for the United States.[7]

IT IS SO ORDERED.

---

**6.** *See* Reply Memorandum, p. 13, n. 7.

**7.** The court notes that the United States has not filed a cross-motion for summary judgment. However, since both parties agree that there are no genuine issues of material fact, there is no need for a trial in this case. Having decided against the plaintiff on the sole legal issue in controversy, the court has effectively resolved all of the matters before it. Thus, although the government has not filed a formal cross-motion for summary judgment, it is nevertheless entitled to judgment as a matter of law.