PAULINE NEWMAN, Circuit Judge.
This case concerns the placement of tax liability in connection with “participating” life insurance policies upon which indemnity reinsurance has been obtained. The policyholder receives premium rebates, called dividends, which vary with the insurer’s interest earnings and thus provide the insurer with flexibility to accommodate varying investment proceeds. For the tax year 1977 the insurer, Gulf Life Insurance Company’s predecessor company Life & Casualty Insurance Company of Tennessee (Taxpayer), obtained indemnity reinsurance of these rebates. The issue is whether the flow of reimbursement by reinsurance imparts tax liability to the insurer, or is correctly treated for tax purposes as flowing directly from the reinsurer to the policyholder.
The issue turns on whether the statutory accounting rules of the National Association of Insurance Commissioners (NAIC) apply, for in accordance with the NAIC rules the income statements of the primary insurer (called the ceding company) and the reinsurer are constructed as if the reinsurer, and not the ceding company, were the issuer of the policy. The government’s position is that the NAIC statutory accounting rules do not apply, and therefore that the reimbursement of these rebates by the reinsurer must be included in the insurer’s gross income. The Court of Federal Claims held[1] that the NAIC rules apply, whereby the rebates paid by Taxpayer to its policyholders, and reimbursed to Taxpayer by reinsurance, yielded no net taxable gain to Taxpayer for tax year 1977. On the government’s appeal, we affirm the judgment of the Court of Federal Claims.
DISCUSSION

A

The Life Insurance Company Income Tax Act of 1959 is codified at §§ 801-820 of the Internal Revenue Code of 1954 as amended. Section 818(a) as in effect in 1977 required that all computations affecting income tax of life insurance companies be made under either an accrual or other permitted method of accounting and be consistent with NAIC accounting procedures:
Section 818. Accounting provisions.
(a) Method of accounting
All computations entering into the determination of the taxes imposed by this part shall be made—
(1) under an accrual method of accounting, or
(2) to the extent permitted under regulations prescribed by the Secretary, under a combination of an accrual method of accounting with any other method permitted by this chapter (other than the cash receipts and disbursements method).
Except as provided in the preceding sentence, all such computations shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.
26 U.S.C. § 818(a). The Court of Federal Claims, citing precedent and legislative history, concluded that § 818(a) requires the use of NAIC accounting except for provisions specifically covered by the Code.
*1565 The legislative history explains that the preference for Code purposes is for NAIC accounting unless that method is inconsistent with the Code and the accrual accounting required by § 818(a):
To the extent not inconsistent with the provisions of the 1954 Code and an accrual method of accounting, all computations entering into the determination of taxes imposed by the new part I shall be made in a manner consistent with the manner required for purposes of the annual statement approved by the National Association of Insurance Commissioners.
S.Rep. No. 291, 86th Cong. (1959), reprinted in 1959 U.S.C.C.A.N. 1575, 1649. The Supreme Court has so held, in resolving various issues of the applicability of NAIC accounting. In Commissioner v. Standard Life & Accident Ins. Co., 433 U.S. 148, 97 S.Ct. 2523, 53 L.Ed.2d 653 (1977), the Court applied § 818(a) to invalidate a Treasury Regulation that was inconsistent with the NAIC rules; the Court explained that § 818(a) “establishes a preference for NAIC accounting methods.” 433 U.S. at 161, 97 S.Ct. at 2531. In Colonial American Life Ins. Co. v. Commissioner, 491 U.S. 244, 109 S.Ct. 2408, 105 L.Ed.2d 199 (1989), the Court reaffirmed the general preference for using NAIC accounting unless the Code explicitly provided otherwise, but held that NAIC accounting did not determine the question of whether ceding commissions on indemnity reinsurance must be capitalized and amortized over the life of the agreement because there were “precise and careful substantive sections of the Code” on this specific question, and that this NAIC methodology was- inconsistent with accrual accounting rules as required for application of § 818(a). 491 U.S. at 254-55, 109 S.Ct. at 2415-16.
The Court of Federal Claims pointed out that the issue of accounting for reinsurance reimbursement of premium rebates to policyholders was not the subject of precise substantive provisions of the Code, see Colonial American Life, 491 U.S. at 255, 109 S.Ct. at 2415-16, but was an accounting procedure within the scope of the NAIC statutory accounting and fully consistent with accrual accounting, invoking Code § 818(a). The court considered and rejected the government’s argument that this NAIC accounting procedure is inconsistent with Code § 820. See United States v. Consumer Life Ins. Co., 430 U.S. 725, 97 S.Ct. 1440, 52 L.Ed.2d 4 (1977) (interpreting § 820 as not applicable to unearned premium reserves on reinsured life insurance policies). The court concluded that the NAIC statutory accounting was properly applied in this ease because it “fill[ed] the gaps in the statutory treatment,” in the words of Standard Life, 433 U.S. at 162 n. 26, 97 S.Ct. at 2531 n. 26.
The government argues that Taxpayer should have made an election under § 820 to treat the reinsurance premiums as received by the reinsurer and not by the reinsured, stating that by such election Taxpayer could acquire the right to rely on § 820(c)(5), which provides that “[t]he dividends to policyholders in respect of the policy reinsured shall be treated as paid by the reinsurer and not by the reinsured.” The Court of Federal Claims held, correctly, that this election omission did not bar the applicability of Code § 809(c)(1), which provides that “premiums and other considerations arising out of reinsurance ceded” are excluded from the premium income of the ceding company, and is implemented by the NAIC accounting procedures.
The legislative history supports Taxpayer’s position that § 820 is directed to a different purpose, viz. that of avoiding double taxation of investment income in some modified coinsurance situations, and does not override or contradict the provisions of § 809(c)(1). The Senate Report explained that the modified coinsurance policy was treated by the statute “generally as if it were a policy issued by the reinsurer instead of the initial insurer.” S.Rep. No. 291, 86th Cong. (1959), reprinted in 1959 U.S.C.C.A.N. 1575, 1614.
Effective January 1, 1982, the law was changed. The Tax Equity and Fiscal Responsibility Act of 1982, Public Law No. 97-248, 96 Stat. 324 (TEFRA) is described as imposing the tax treatment that the government here seeks for 1977. The congressional summary of the relevant change explains:
The provisions relating to reimbursements were also revised so that policyholder divi *1566 dends paid in connection with reinsured policies are treated as paid by the reinsured company rather than by the reinsurer.
H.R.Rep. No. 760, 97th Cong. (1982), reprinted in 1982 U.S.C.C.A.N. 1190, 1412. Although explanations of a subsequent enactment do not control the interpretation of a prior law, O’Gilvie v. United States, — U.S. —, —, 117 S.Ct. 452, 458, 136 L.Ed.2d 454 (1996), a clearly stated legislative purpose to revise the law is informative when considering the argument that the prior law should be interpreted to be identical to the later revision.
The 1982 provisions were prospective only. We share the reasoning of Wickert v. Commissioner, 842 F.2d 1005, 1008 (8th Cir. 1988), that it is unlikely that Congress would have made the revisions explicitly prospective if it were merely clarifying prior law instead of changing it. Thus the 1982 change of law reinforces the conclusion that NAIC accounting was properly applied to these pri- or reinsurance arrangements.

B

We have considered the several additional arguments raised by the government. Tax planning is not a disapproved activity. The government stipulated that Taxpayer’s reinsurance agreement was entered into for valid business purposes and had economic substance; Taxpayer in turn stipulated that tax planning was a principal business purpose. A “major motive” to reduce taxes is not grounds of illegality. See United States v. Cumberland Pub. Serv. Co., 338 U.S. 451, 455, 70 S.Ct. 280, 282, 94 L.Ed. 251 (1950). We discern no merit in this or the other peripheral arguments on which the government suggests reversal.[2]

Conclusion

The Taxpayer properly treated these reinsurance reimbursements of policyholder premium rebates in accordance with the NAIC statutory accounting rules, whereby the payments are not includable in Taxpayer’s net income for 1977 federal income tax purposes.
Costs to Gulf Life Insurance Co.

AFFIRMED.

. Gulf Life Insurance Co. v. United States, 35 Fed. Cl. 12 (1996).

. We observe the dissenting opinion’s criticism of the portion of the opinion of the Court of Federal Claims wherein the court drew an analogy to the tax treatment of attorney advances to clients and other loan/reimbursement cases. This analogy was not the primary ground of the trial court’s ruling, which was based on the statute. Thus we have not discussed this general issue of tax treatment of reimbursed business expenses.