113 T.C. No. 19


UNITED STATES TAX COURT


CENTRAL RESERVE LIFE CORPORATION AND SUBSIDIARIES, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21390-96.                    Filed October 12, 1999.


        P's subsidiary, L, writes cancelable accident and
health (CA&H) insurance.  R argues that L is not a
"life insurance company" under sec. 816(a), I.R.C.,
because L's accrued unpaid losses on CA&H insurance are
"unpaid losses" for purposes of ascertaining its "total
reserves" under sec. 816(c), I.R.C.  P argues that L is
a life insurance company under sec. 816(a), I.R.C.,
because the term "unpaid losses", as used in sec.
816(c), I.R.C., does not include accrued unpaid losses
on CA&H insurance.
        <u>Held</u>: L is a life insurance company under sec.
816(a), I.R.C.; its accrued unpaid losses on CA&H
insurance are not "unpaid losses" for purposes of sec.
816(c), I.R.C.

Michael R. Schlessinger and Michael A. Clark, for petitioner.

Katherine Lee Wambsgans, for respondent.


OPINION


LARO, Judge: This case is before the Court fully stipulated. See Rule 122. Central Reserve Life Corporation and Subsidiaries petitioned the Court to redetermine respondent's determination of deficiencies of $1,936,766 and $225,070 in its consolidated Federal income tax for 1991 and 1992, respectively. Following the parties' concessions, we must decide whether the phrase "unpaid losses * * * not included in life insurance reserves" as used to define the term "total reserves" in section 816(c)(2) includes accrued unpaid losses on cancelable accident and health (CA&H) insurance policies.[1] We hold it does not. Unless otherwise stated, section references are to the Internal Revenue Code in effect for the subject years. Rule references

_____

[1] An "unpaid loss" generally is an insurer's estimate of its liability for claims arising out of injuries which have already occurred. Unpaid losses may be accrued or unaccrued. Assume, for example, that a policyholder fractures his pelvis in an automobile accident and is transported to the emergency room by ambulance. The expenses incurred in the emergency room are accrued because reimbursement may be claimed at any time. Future rehabilitation expenses are unaccrued; although these expenses may be estimated before they are incurred, the insurer need not pay for them until they are incurred. See Harco Holdings, Inc. v. United States, 977 F.2d 1027, 1029 (7th Cir. 1992).

are to the Tax Court Rules of Practice and Procedure. We use the term "petitioner" to refer solely to Central Reserve Life Corporation.

## Background

All facts have been stipulated. The stipulation of facts and the exhibits submitted therewith are incorporated herein by this reference. Petitioner's principal place of business was in Strongsville, Ohio, when its petition was filed.

Petitioner is the parent corporation of an affiliated group of corporations that files consolidated Federal income tax returns. Central Reserve Life Insurance Company (Central Life) is petitioner's wholly owned subsidiary. Central Life writes life insurance and accident and health (A&H) insurance.

Insurance regulators require that insurance companies maintain defined levels of assets to guarantee that they can pay their claims when the claims become due. These asset reserves generally must equal the amount of funds which, when increased at a stated rate of interest, will allow the company to pay its claims at their actuarially estimated due dates.

Insurance companies must report their anticipated obligations for claims on a standard annual statement promulgated by the National Association of Insurance Commissioners (NAIC) and adopted by all 50 States. The annual statement characterizes an insurer's life and A&H obligations as either "reserves" or

"liabilities", and it uses the word "accrual" to distinguish current obligations from future obligations.[2] A reserve is an unaccrued claim for which the insurer will become liable in the future; e.g., the future rehabilitation expenses described <u>supra</u> note 1. A liability is an accrued claim for which the insurer is liable now; e.g., the emergency room expenses described <u>supra</u> note 1. Exhibit 8 of the annual statement lists an insurer's "Aggregate Reserve for Life Policies and Contracts". Exhibit 9 lists an insurer's "Aggregate Reserve for Accident and Health Policies". Exhibit 11 lists an insurer's "Policy and Contract Claims"; data on these claims is listed separately as to yearend liabilities for life insurance and A&H insurance.

Central Life filed its 1990 through 1992 annual statements with the Ohio Department of Insurance. As relevant herein, Central Life reported its claim obligations on life insurance policies and annuities on exhibits 8 and 11, and it reported its claim obligations on A&H insurance policies on exhibits 9 and 11. Central Life reported its unaccrued claim obligations for life insurance and A&H insurance as reserves on exhibits 8 and 9, respectively, and it reported all of its accrued claim obligations as liabilities on exhibit 11. During 1990 and 1991,

---

[2] The use of the word "accrual" in the insurance industry does not conform to the definition of that word under Generally Accepted Accounting Principles.

Central Life wrote primarily guaranteed renewable A&H insurance. In the latter year, Central Life qualified as a life insurance company under the ratio (reserve ratio) set forth in section 816(a). In 1991, Central Life properly included unpaid losses with respect to its guaranteed renewable A&H insurance in the reserve ratio's numerator and denominator.

Beginning in late 1991, Central Life added a rider to its existing guaranteed renewable A&H insurance policies, which allowed it to terminate any of these policies upon 90 days' notice. By virtue of this rider, Central Life's A&H insurance policies issued after late 1991 were no longer guaranteed renewable policies; they were nonguaranteed renewable or CA&H insurance policies. Because Central Life stopped issuing guaranteed renewable A&H insurance policies in late 1991, unearned premiums and unpaid losses with respect to those policies were no longer properly includable in the reserve ratio's numerator in 1992 and years thereafter. Central Life's A&H insurance business in 1992 consisted almost exclusively of CA&H insurance; it also wrote a small amount of guaranteed renewable group A&H insurance.

The parties agree that unpaid losses with respect to Central Life's CA&H insurance policies are not includable in the reserve ratio's numerator. The parties dispute whether those amounts must be included in the reserve ratio's denominator. Respondent

determined and argues that the denominator includes these amounts. Petitioner argues that the denominator does not include these amounts. If petitioner is correct, Central Life qualifies as a life insurance company under section 816(a). If respondent is correct, Central Life fails to qualify as a life insurance company for Federal income tax purposes, and petitioner's taxable income would include Central Life's policyholder surplus of $2,869,768. Central Life also would not be entitled to the small life insurance company deduction in the amounts that it reported for the subject years.

## Discussion

The parties dispute whether Central Life qualifies as a life insurance company for Federal income tax purposes. Congress has enacted in the Internal Revenue Code different rules of taxation for insurance companies that are life insurance companies as opposed to nonlife insurance companies such as property and casualty (P&C) insurance companies. Compare secs. 801-818 (rules applicable to life insurance companies) with secs. 831-835 (rules applicable to nonlife insurance companies). The rules that apply to life insurance companies are more favorable to insurance companies from a tax point of view than are the rules which apply to nonlife insurance companies. See United States v. Consumer Life Ins. Co., 430 U.S. 725, 727-728 (1977).

An insurance company is a life insurance company for Federal income tax purposes if it meets the definition set forth in section 816. Section 816 provides in part:

SEC. 816. LIFE INSURANCE COMPANY DEFINED.

(a) Life Insurance Company Defined.--For purposes of this subtitle, the term "life insurance company" means an insurance company which is engaged in the business of issuing life insurance and annuity contracts (either separately or combined with accident and health insurance), or noncancellable contracts of accident and health insurance, if--

(1) its life insurance reserves (as defined in subsection (b)), plus

(2) unearned premiums, and unpaid losses (whether or not ascertained), on noncancellable life, accident or health policies not included in life insurance reserves,

comprise more than 50 percent of its total reserves (as defined in subsection (c)). * * *

(b) Life Insurance Reserves Defined.--

(1) In general. For purposes of this part, the term "life insurance reserves" means amounts--

(A) which are computed or estimated on the basis of recognized mortality or morbidity tables and assumed rates of interest, and

(B) which are set aside to mature or liquidate, either by payment or reinsurance, future unaccrued claims arising from life insurance, annuity, and noncancellable accident and health insurance contracts (including life

insurance or annuity contracts
combined with noncancellable
accident and health insurance)
involving, at the time with respect
to which the reserve is computed,
life, accident, or health
contingencies.

(2) Reserves must be required by law.--Except--

(A) in the case of policies
covering life, accident, and health
insurance combined in one policy
issued on the weekly premium
payment plan, continuing for life
and not subject to cancellation, *
* *

in addition to the requirements set forth in
paragraph (1), life insurance reserves must
be required by law.

* * * * * * *

(4) Amount of reserves.  For purposes of
this subsection, subsection (a), and
subsection (c), the amount of any reserve (or
portion thereof) for any taxable year shall
be the mean of such reserve (or portion
thereof) at the beginning and end of the
taxable year.

(c) Total Reserves Defined.--For purposes of
subsection (a), the term "total reserves" means--

(1) life insurance reserves,

(2) unearned premiums, and unpaid losses
(whether or not ascertained), not included in
life insurance reserves, and

(3) all other insurance reserves
required by law.

In a case of first impression in this Court, we must decide

whether the phrase "unpaid losses * * * not included in life

insurance reserves" as used in section 816(c)(2) to define an insurer's "total reserves" includes accrued unpaid losses on CA&H insurance policies. The Court of Appeals for the Seventh Circuit has concluded it does not. See <u>Harco Holdings, Inc. v. United States</u>, 977 F.2d 1027 (7th Cir. 1992), revg. 754 F. Supp. 130 (N.D. Ill. 1990). The Court of Appeals for the Ninth Circuit has concluded that the term "unpaid losses" did include accrued unpaid losses for purposes of section 806(c), before its repeal by section 2 of the Life Insurance Company Income Tax Act of 1959, Pub. L. 86-69, 73 Stat. 112.[3] See <u>United States v. Occidental Life Ins. Co.</u>, 385 F.2d 1, 6 (9th Cir. 1967), revg. on this issue 250 F. Supp. 130 (S.D. Cal. 1965). The United States Court of Claims also considered this issue in the context of former section 806(c)'s predecessor. That court reached a conclusion consistent with the view of the Court of Appeals for the Ninth Circuit. See <u>Prudential Ins. Co. v United States</u>, 162 Ct. Cl. 55, 319 F.2d 161, 165-166 (1963).

---

[3] Former sec. 806(c) provided:

In the case of a life insurance company writing contracts other than life insurance or annuity contracts (either separately or combined with noncancellable health and accident insurance), the term "adjustment for certain reserves" means an amount equal to 3 1/4 percent of the unearned premiums and unpaid losses on such other contracts which are not included in life insurance reserves * * *.

We agree with the Court of Appeals for the Seventh Circuit that the phrase "unpaid losses * * * not included in life insurance reserves" as used in section 816(c)(2) to define an insurer's "total reserves" does not include accrued unpaid losses on CA&H insurance policies. Our analysis starts with the statutory text, and we construe that text in accordance with its ordinary, everyday meaning. We refer to the legislative history primarily to learn the purpose of the statute in which the language appears and to resolve any ambiguity in the words used in the text. See Landgraf v. USI Film Prods., 511 U.S. 244 (1994); Commissioner v. Soliman, 506 U.S. 168, 174 (1993); Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., 447 U.S. 102, 108 (1980); Crane v. Commissioner, 331 U.S. 1, 6 (1947); Venture Funding, Ltd. v. Commissioner, 110 T.C. 236, 241-242 (1998); Booth v. Commissioner, 108 T.C. 524, 568-569 (1997); Trans City Life Ins. Co. v. Commissioner, 106 T.C. 274, 299 (1996).

The ordinary, everyday meaning of text is usually the meaning of the words or phrases therein that is commonly understood by the public in general; e.g., the most common dictionary definitions. See, e.g., Mallard v. United States Dist. Court for S. Dist., 490 U.S. 296, 301 (1989); National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472, 480 (1979); Crane v. Commissioner, supra at 6; Hefti v. Commissioner, 97 T.C. 180, 193 (1991), affd. 983 F.2d 868 (8th

Cir. 1993).  In the case at hand, however, the text of section 816 is found in subchapter L of the Code.  Congress drafted subchapter L and its predecessors using the specialized language of the insurance industry, and Congress understood that language to have the technical meaning given to it by that industry.  See Helvering v. Independent Life Ins. Co., 292 U.S. 371, 379 (1934); Alinco Life Ins. Co. v. United States, 178 Ct. Cl. 813, 373 F.2d 336, 352 (1967); see also United States v. American Trucking Associations, Inc., 310 U.S. 534, 543-544 (1940).  It is only appropriate, therefore, to construe the subject text in the light of its usage in the insurance industry, to the extent that it has an established meaning in that industry.  See Atlantic Mut. Ins. Co. v. Commissioner, 523 U.S. 382 (1998); Hedden v. Richard, 149 U.S. 346, 348-349 (1893); South Jersey Sand Co. v. Commissioner, 30 T.C. 360, 368 (1958), affd. 267 F.2d 591 (3d Cir. 1959).  The meaning of the words in the insurance industry may be gleaned from their use in the annual statement which contains, references, and incorporates many of the industry's terms of art. The annual statement is instructive in understanding the peculiar meaning of those words, which, in turn, may make it most helpful in construing the provisions of subchapter L.  See Commissioner v. Standard Life & Accident Ins. Co., 433 U.S. 148, 157-163 (1977); Harco Holdings, Inc. v. United States, supra at 1033.

We turn to the evolution of the term "unpaid losses", taking into account the taxation of insurance companies in general and the authorities that Congress had before it at the time it added the term to section 201 of the Internal Revenue Code of 1939 in section 163(a) of the Revenue Act of 1942 (1942 Act), ch. 619, 56 Stat. 798, 867. Whereas respondent asks the Court to ascertain Congress' intent for the relevant provisions of the 1942 Act by considering legislation that was enacted 40 and more years thereafter, we limit our analysis of that intent to the materials which were before Congress in 1942. "It is emphatically the province and duty of the judicial department to say what the law is", Marbury v. Madison, 5 U.S. (1 Cranch) 137, 177 (1803); see also United States v. American Trucking Associations, Inc., supra at 544, and the views of one Congress as to the meaning of prior legislation have little bearing on a court's furtherance of that duty, see Consumer Prod. Safety Commn. v. GTE Sylvania, Inc., supra at 117-118; Haynes v. United States, 390 U.S. 85, 87 n.4 (1968); United States v. Philadelphia Natl. Bank, 374 U.S. 321, 348-349 (1963); United States v. United Mine Workers, 330 U.S. 258, 281-282 (1947); see also United States v. Price, 361 U.S. 304, 313 (1960) ("the views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one"). Such is especially true in the instant case where few of the legislators who voted on the subsequent legislation in the 1980's

were members of Congress in 1942.  See, e.g., <u>United States v.
United Mine Workers</u>, <u>supra</u> at 281-282.

Life insurance companies became subject to Federal income
tax when the Sixteenth Amendment to the United States
Constitution was ratified in 1913.  Before that time, insurance
companies which were corporations were subject to an annual
excise tax of 1 percent of their net income over $5,000.  See
Federal Corporation Excise Tax Act of 1909, ch. 6, sec. 38, 36
Stat. 112.  Unlike other corporations, an insurance company's net
income included a deduction for the "net addition, if any,
required by law to be made within the year to reserve funds".
<u>Id.</u>  This deduction was the subject of much litigation by
casualty companies, and the judicial interpretations on the
breadth of that deduction were not always easily harmonized.
Compare <u>McCoach v. Insurance Co. of North Am.</u>, 244 U.S. 585
(1917) (reserve against unpaid losses was not required by law),
with <u>Maryland Cas. Co. v. United States</u>, 251 U.S. 342 (1920)
(approving liability reserve for accrued indefinite liabilities
and loss claim reserve for other accrued losses).

After the Sixteenth Amendment was ratified, life insurance
companies continued to be taxed in the early years of our tax
system under the same general rules that applied to noninsurance
companies.  Both types of companies were taxed on their gross
income, which, in the case of a life insurance company, consisted

mainly of underwriting income, investment income, and capital gains. Life insurance companies, however, continued to be allowed to deduct the net addition required by law to be made within the year to reserve funds. Life insurance companies also could deduct that portion of their net investment income that was credited to policyholders' reserves as required by law. Actuarial concepts governed the application of the reserve deduction provision of the revenue acts up until 1921. See, e.g., Income Tax Act of 1913, ch. 16, sec. II(G)(b), 38 Stat. 114, 173; Revenue Act of 1916, ch. 463, sec. 12(a) Second, 39 Stat. 756, 768; Revenue Act of 1918, ch. 18, sec. 234(a)(10), 40 Stat. 1057, 1079; see also Commissioner v. Standard Life and Accident Ins. Co., supra at 152; Union Cen. Life Ins. Co. v. Commissioner, 77 T.C. 845, 849-850 (1981), vacated and remanded on another issue 720 F.2d 420 (6th Cir. 1983).

By 1921, Congress recognized that the rules which applied to life insurance companies were inequitable. Adequate revenues were not being raised from the insurance industry, and life insurance companies were constantly litigating issues concerning their taxability; e.g., as to whether premiums constituted taxable income. See S. Rept. 275, 67th Cong., 1st Sess. 14 (1921), 1939-1 C.B. (Part 2) 181, 195; H. Rept. 350, 67th Cong., 1st Sess. 14 (1921), 1939-1 C.B. (Part 2) 168, 178; see also Union Cen. Life Ins. Co. v. Commissioner, supra at 849-850. The

Revenue Act of 1921 (1921 Act), ch. 136, sec. 247(a)(4), 42 Stat. 263, changed favorably to life insurance companies the law under which life insurance companies were taxed by providing a system under which life insurance companies were taxed only on their net investment income.  Investment income, for this purpose, did not include premiums, losses and expenses incurred in underwriting operations, and gains and losses from the sale of investment assets.  The portion of investment income set aside in reserves to satisfy a company's obligations to its policyholders under its insurance contracts also was excluded from taxation.  See id.

Before the 1921 Act, the same statutory provisions applied to tax both life and P&C insurers.  The 1921 Act changed this uniformity by providing for life insurance companies rules which were different and generally more favorable than the rules under which a P&C insurer was taxed.  The 1921 Act taxed P&C insurers on both their investment and premium income and did not allow them to deduct their reserve funds.  P&C insurers, however, could deduct their "losses incurred", see 1921 Act sec. 247(a)(4), 42 Stat. 263, a deduction that required a calculation of the P&C insurer's unpaid losses at the end of the year, see 1921 Act sec. 246(b)(6), 42 Stat. 227.  For the purpose of this calculation, the unpaid losses of a P&C company included its accrued liabilities.  See Retailers Fire Ins. Co. v. Commissioner, 3

B.T.A. 1186, 1193 (1926) (accrued liability for fire loss is deductible unpaid loss).

An insurance company was a life insurance company under the 1921 Act if more than half of its total reserves were life insurance reserves.  See 1921 Act sec. 242, 42 Stat. 261.  This qualification fraction, which is the genesis of the reserve ratio, meant that an insurance company could not qualify as a life insurance company for Federal income tax purposes unless more than 50 percent of its total insurance reserves was attributable to life insurance or analogous contracts.  See Alinco Life Ins. Co. v. United States, 178 Ct. Cl. 813, 373 F.2d 336, 347 (1967).

An application of the qualification test under the 1921 Act was difficult because the 1921 Act failed to define many relevant terms.  Section 163(a) of the 1942 Act addressed this concern by defining the term "life insurance reserves", adding the term "unpaid losses on noncancellable life, health, or accident policies" to "life insurance reserves" in the numerator of the reserve ratio, and defining the term "total reserves" in the denominator of the reserve ratio to include the term at issue; i.e.,"unpaid losses".  Those provisions were carried forward substantially unchanged into section 816 as applicable herein.[4]

---

[4] Sec. 2 of the Life Insurance Company Income Tax Act of

(continued...)

With this backdrop in mind, we turn to the respective arguments of the parties. Respondent looks to the subject term, "unpaid losses", and argues that a plain reading of this term includes all unpaid losses, accrued or unaccrued. That reading, respondent continues, comports with the definitions of "unpaid losses" and "reserves" which were prevalent in the P&C insurance industry at the time of the 1942 Act. Respondent argues that Congress, in the 1942 Act, used the P&C meaning of "unpaid losses" to refer to unpaid losses in the industry of life and A&H insurance. Respondent argues that the insurance industry treats an accrued unpaid loss as substantively the same as an unaccrued unpaid loss and a reserve as substantively the same as a liability. Respondent acknowledges that the insurance industry distinguishes between accrued and unaccrued unpaid losses for purposes of the annual statement but asserts that this distinction is meaningless for Federal income tax purposes. Petitioner argues that the industry of life and A&H insurance, unlike the P&C insurance industry, makes a meaningful distinction between an unpaid loss that has accrued and an unpaid loss that has not accrued, and petitioner asserts that the industry of life and A&H insurance considers a reserve to be different from a

[4](...continued)
1959, Pub. L. 86-69, 73 Stat. 112, added the parenthetical phrase "whether or not ascertained" now found in sec. 816(a)(2).

liability. Petitioner argues that the meaning of the subject term as given to it by the industry of life and A&H insurance is the meaning that applies here.

We agree with petitioner that the specific industry at the focus of our inquiry is life and A&H insurance and that the life and A&H insurance industry distinguishes meaningfully a reserve from a liability and an accrued unpaid loss from an unaccrued unpaid loss. We also agree with petitioner that an unaccrued unpaid loss, which the industry treats as a reserve and not a liability, is substantively different for purposes of section 816 from an accrued unpaid loss, which the industry treats as a liability and not a reserve.

As we read the applicable text with its lengthy history in mind, we believe that Congress meant for the term "unpaid losses" to reach only those unpaid losses which are technical reserves in the NAIC sense; to wit, unaccrued unpaid losses. According to the NAIC, an unaccrued unpaid loss is considered a reserve for annual statement purposes, and an accrued unpaid loss is considered a liability.[5] We, like the Court of Appeals for the

---

[5] As we understand the nomenclature of the life and A&H industry, an A&H insurer incurs a loss upon the happening of an insured event, and, when it does, the estimated liability on the portion of the loss that represents services yet to be received is called an unaccrued unpaid loss or a reserve. The estimated liability of the portion that represents services already received is called an accrued unpaid loss or an accrued

(continued...)

Seventh Circuit in <u>Harco Holdings, Inc. v. United States</u>, 977
F.2d 1027, 1033 (7th Cir. 1992), believe that the NAIC's
treatment of an item in the annual statement is an "authoritative
interpretive guide" as to the item's treatment for Federal income
tax purposes, and that, when placed in the context of this case,
the item known as accrued unpaid losses does not fall within the
meaning of the term "unpaid losses" for purposes of section
816(c).  See also <u>Gulf Life Ins. Co. v. United States</u>, 35 Fed.
Cl. 12 (1996), affd. 118 F.3d 1563 (Fed. Cir. 1997).  To be sure,
the legislative purpose of the reserve ratio is to define
mechanically the term "total reserves", and the fact that an
accrued unpaid loss is not a reserve within the meaning of the
term in the industry of life and A&H insurance leads to the
conclusion that the legislators did not intend for accrued unpaid
losses to enter into "total reserves".

Respondent relies on <u>Occidental Life Ins. Co. v. United
States</u>, 385 F.2d 1 (9th Cir. 1967), to support his assertion that
the annual statement's distinction between accrued and unaccrued
items is meaningless for Federal income tax purposes.  We, for
the reasons stated by the Court of Appeals for the Seventh
Circuit in <u>Harco Holdings, Inc. v. United States</u>, <u>supra</u>, find
<u>Occidental Life Ins. Co.</u> unhelpful to us in construing the term

---

[5](...continued)
liability.

"unpaid losses" for purposes of section 816(c)(2). In Occidental Life Ins. Co., the Court of Appeals for the Ninth Circuit was asked to decide whether the use of the term "unpaid losses" in former section 806(c) included accrued unpaid losses. The Court of Appeals for the Ninth Circuit held it did. The parties in that case had stipulated that the term had the same meaning in former sections 801 and 806(c), and the court construed section 816's predecessor (former section 801) merely as support for its ultimate conclusion. See Occidental Life Ins. Co. v. United States, supra at 5. The court stated that the term "unpaid losses" in former section 801 included accrued unpaid losses.[6] See id. at 6. The court reasoned that most unaccrued unpaid losses fall within the meaning of "life insurance reserves" for purposes of former section 801(a)(1), (b), and (c)(1), and that the reference to "unpaid losses" in former section 801(a)(2) and (c)(2) would be meaningless were the term not to include both accrued and unaccrued unpaid losses. Id.

The Court of Appeals for the Seventh Circuit noted that this rationale of the Court of Appeals for the Ninth Circuit was based

---

[6] In this regard, the Court of Appeals for the Ninth Circuit's analysis of the subject term under former sec. 801 was dicta. The court acknowledged as much when it stated that "an examination of section 801 along these comparative lines is not required for a conclusion as to the meaning of 'unpaid losses' in section 806". Occidental Life Ins. Co. v. United States, 385 F.2d 1, 5 (9th Cir. 1967).

on a "false premise":  "unaccrued unpaid losses are generally not included in 'life insurance reserves' because they are not 'computed or estimated on the basis of recognized mortality or morbidity tables. * * *'  Sec. 801(b).  * * *  Thus, the provisions for 'unpaid losses' need not be superfluous, even if they include only unaccrued unpaid losses."  Harco Holdings, Inc. v. United States, supra at 1036; fn. ref. omitted.  The Court of Appeals for the Seventh Circuit also noted that the Court of Appeals for the Ninth Circuit's reasoning had a "logical flaw":  "If 'unpaid losses' means all unpaid losses, and 'life insurance reserves' includes unaccrued unpaid losses, then the statute counts unaccrued unpaid losses twice.  Thus the court avoided making the provisions for 'unpaid losses' superfluous by making them redundant."  Id. at 1036 n.14.  The Court of Appeals for the Seventh Circuit concluded:

> Although we are not persuaded by the Ninth Circuit's reasoning, * * * we need not reject Occidental Life * * * out of hand.  Instead, we note that identical language in sections 806 and 801 need not have the same meaning.  Section 806 governs a tax deduction, while section 801 is a definitional provision.  Deductions are a matter of legislative grace, to be construed strictly against taxpayers. Definitional provisions, like section 801, get a somewhat more liberal reading.  United States v. Consumer Life Ins. Co., 430 U.S. 725, 752-53 n.38, 97 S.Ct. 1440, 1454 n. 38, 52 L.Ed.2d 4 (1977) (restrictive interpretation given to tax deductions should not be applied to section 801); Swift, 151 F.2d at 628-29 (rejecting argument that the predecessor statutes to sections 801 and 806 should be construed

identically). * * *  [Id. at 1036-1037; fn. refs. and some citations omitted.]

Our conclusion that the term "total reserves" does not include accrued unpaid losses is also supported by examining the structure of the statute.  The applicable statute, section 816, treats the class of "unpaid losses" as a subset of a much larger class of items called "reserves".  An insurer's "total reserves" are defined by section 816(c) to include its "unpaid losses", and the latter term is followed in the text by a clause that reads "and * * * all other insurance reserves required by law", sec. 816(c)(3).  The fact that an accrued unpaid loss is not a reserve in the pertinent insurance industry means that it cannot be included in a subset of reserves, nor followed by "other insurance reserves".  Moreover, an insurer's "unpaid losses" are added to its "life insurance reserves" under section 816(a) to reach a sum that must "comprise more than 50 percent of its total reserves".  Sec. 816(a).

Our interpretation is further supported by the fact that the word "reserves" had acquired a fixed and definite meaning in the life and A&H industry at the time of the 1942 Act.  The 1942 Act, as discussed above, added the term "unpaid losses" to the Code, and the legislative history surrounding the 1942 Act contains no indication that Congress intended to use the word "reserves" in other than the meaning that was then crystallized in the life and

A&H industry and in the courts.  As discussed infra, courts had held repeatedly before the 1942 Act that the word "reserves" in the life and A&H industry included unaccrued unpaid losses and, more importantly, that the meaning of the word did not include accrued unpaid losses.  Whereas respondent asks the Court to conclude that Congress intended for the word to carry a contrary meaning prevalent in the P&C insurance industry, we decline to do so.[7]  The P&C insurance industry is substantively different from the industry of life and A&H insurance, and we read nothing in the 1942 Act or the legislative history thereunder that would persuade us that Congress meant for the word "reserves" in the context of life and A&H insurance to have the meaning given to it by the P&C insurance industry.  To be sure, the most logical conclusion from the fact that Congress used the word in the relevant parts of the statute in the setting of life and A&H insurance is that Congress meant for that word to have the established meaning in the life and A&H industry.

As to the history of the meaning of the word "reserves", the first regulatory definition of that word in the setting of life and A&H insurance is found in Regs. 62, Art. 681 (1921 Act).

---

[7] The P&C meaning of the term "unpaid losses" included accrued unpaid losses.  See, e.g., Pacific Employers Ins. Co. v. Commissioner, 33 B.T.A. 501, 504 (1935), affd. 89 F.2d 186 (9th Cir. 1937); Retailers Fire Ins. Co. v. Commissioner, 3 B.T.A 1186 (1926).

Those regulations, which govern the reserve deduction under the 1921 Act, state:

> The reserve deduction is based upon the reserves required by express statutory provisions or by the rules and regulations of the State insurance departments when promulgated in the exercise of a power conferred by statute; * * * Only reserves peculiar to insurance companies are to be taken into consideration. * * * Generally speaking, the following will be considered reserves as contemplated by the law: Items 7, 8, 9, 10, and 11 of the liability page of the annual statement for life companies, and items 16, 17, 18, 19, and 26 of the liability page of the annual statement for miscellaneous stock companies, if a life insurance company is also transacting other kinds of insurance business.  * * *

The accompanying regulations which controlled the calculation of the reserve ratio stated that the definition in Article 681 would also apply for purposes of that ratio.  See Regs. 62, Art. 661 (1921 Act).  Subsequent regulations under the Revenue Act of 1924, ch. 234, 43 Stat. 253, the Revenue Act of 1926, ch. 27, 44 Stat. 9, the Revenue Act of 1928, ch. 852, 45 Stat. 791, and the Revenue Act of 1932, ch. 209, 48 Stat. 680, continued this treatment by carrying forward the language in the 1921 regulations as to the definition of a "reserve" and the computation of the reserve ratio.

With the passage of the Revenue Act of 1934 (1934 Act), ch. 277, 48 Stat. 680, the Commissioner changed his view on the meaning of the word "reserves" as applied to the industry of life and A&H insurance.  The Commissioner adopted in the regulations

thereunder a meaning for the word "reserves" that was more restrictive than the previous definition, stating in the regulations that only a reserve that related to a "future unaccrued and contingent" claim would qualify as a reserve for purposes of the reserve deduction. Regs. 86, sec. 203(a)(2)-1 (1934 Act). The regulations went on to provide that the word "reserves" did not include "reserves required to be maintained to provide for the ordinary running expenses of a business * * * such as * * * accrued but unsettled policy claims". Id. The regulations, unlike their predecessors, did not reference any specific items of the liability page of the annual statement that would generally constitute a reserve for Federal income tax purposes.

Much litigation flowed from the Commissioner's definition of the word "reserves" as set forth in the 1934 regulations, and courts held that some of the items which would have qualified under the prior regulations no longer qualified under the new definition. See, e.g., Equitable Life Assurance Socy. v. Commissioner, 44 B.T.A. 293 (1941) (amounts reported on line 9 on the annual statement were not reserves because they represented liabilities which had already matured). As to many of the other items referenced in the pre-1934 regulations, however, such as the reserves relating to A&H insurance, the courts held that those amounts continued to be "technical insurance reserves"

because they were "future, unaccrued and contingent amounts".
According to these courts, only "future, unaccrued and contingent
amounts" could constitute a "reserve". See, e.g., Commissioner
v. Monarch Life Ins. Co., 114 F.2d 314, 325 (1st Cir. 1940)
(citing, inter alia, Helvering v. Inter-Mountain Life Ins. Co.,
294 U.S. 686 (1935)), affg. 38 B.T.A. 716 (1938); PanAmerican
Life Ins. Co. v. Commissioner, 38 B.T.A. 1430 (1938), affd. 111
F.2d 366 (5th Cir. 1940); Equitable Life Assurance Socy. v.
Commissioner, 33 B.T.A. 708 (1935). A statement to a similar
effect appeared in an opinion of the United States Supreme Court.
See Helvering v. Oregon Mut. Life Ins. Co., 311 U.S. 267, 271-272
(1940) (unpaid losses are reserves to the extent that they have
not accrued). Moreover, although deductible reserves and the
reserves required for qualification as a life insurance company
under the predecessors to section 816 were not identical, see,
e.g., Commissioner v. Monarch Life Ins. Co., 114 F.2d at 325
(deductible reserves need not be life insurance reserves), there
seems to be no question that the underlying concept of "reserves"
was the same in both provisions. Certainly the Commissioner
thought so. See Regs. 86, sec. 201(a)-1 (1934 Act) (deductible
reserves and qualification reserves are the same).

The 1942 Act added what is now section 816(a)(2), whereby
unclaimed losses on A&H policies are included in the numerator of
the fraction. Congress did so because it recognized that

noncancelable and certain other types of A&H insurance had characteristics similar to life insurance and that companies writing those policies should be allowed to qualify more easily as life insurance companies. See S. Rept. 1631, 77th Cong., 2d Sess. (1942), 1942-2 C.B. 504, 611-612. Contrary to respondent's arguments, Congress neither amended the reserve ratio intending to depart from the well-established emphasis on reserves to determine the nature of an insurance company's business, nor redefined the reserve ratio by introducing for the first time P&C insurance terminology into life and A&H products. Congress merely identified with particularity the reserves that were required for life and A&H insurance.

Respondent also relies inappropriately on National Protective Ins. Co. v. Commissioner, 128 F.2d 948 (8th Cir. 1942), affg. 44 B.T.A. 978 (1941), stating that the case is "eerily similar" to the facts at hand.[8] That case has little

---

[8] Respondent also is mistaken by his reliance on the Tax Equity and Fiscal Responsibility Act of 1982, Pub. L. 97-248, 96 Stat. 324, and the Tax Reform Act of 1984, Pub. L. 98-369, 98 Stat. 494, to infer therefrom the meaning of the term "unpaid losses". That term was added to the Internal Revenue Code of 1939 by the Revenue Act of 1942, ch. 619, sec. 163(a), 56 Stat. 798, 867, and those subsequent acts have no bearing on its meaning. Respondent infers from the later acts that the fact that Congress did not explicitly state therein that accrued unpaid losses on CA&H insurance were excluded from "unpaid losses" means that Congress did not intend to exclude those items from that term when it was enacted in 1942. Respondent cites West Va. Univ. Hosps., Inc. v. Casey, 499 U.S. 83, 98 (1991),

(continued...)

relevancy to our analysis herein.  There, the insurer derived 98 percent of its premium income from A&H insurance and 2 percent from life insurance.  In contrast to the unpaid losses at issue in this case, the issue there was whether the insurer's unearned premiums were reserves.  The taxpayer generally argued that no A&H obligation could meet the pre-1942 definition of "reserve", and it did not distinguish between accrued and unaccrued obligations, asserting that the unearned premiums were not true insurance reserves because they were not "required by law".  The court disagreed, citing <u>Commissioner v. Monarch Life Ins. Co.</u>, <u>supra</u>, to hold that the reserve deduction is not limited to reserves that are life insurance reserves.  Nor does petitioner disagree with that holding.  In fact, the parties agree that petitioner included its unearned premiums in the reserve ratio's denominator.  Contrary to respondent's argument, it does not follow from <u>National Protective Ins. Co.</u> that all A&H obligations

---

[8](...continued) with the following parenthetical: "(observing that purpose of statute includes not only what it sets out to change, but also what it resolves to leave alone)."  In addition to the fact that respondent could have made the same argument with respect to every act that postdated the 1942 Act, the fact that Congress did not change the reserve ratio in the later acts aids respondent's position only if the reserve ratio meant what respondent says it did before those acts.  As explained herein, it did not.  In fact, the cited case is far more apt as a description of the events surrounding the 1942 Act, in which Congress set out to make it easier for companies writing noncancelable A&H insurance to qualify as life insurance companies.

are reserves merely because the court held there that some A&H obligations are reserves.

The only case that has squarely addressed the meaning of the subject term in section 816(c)(2) is Harco Holdings, Inc. v. United States, 977 F.2d 1027 (7th Cir. 1992). There, the taxpayer's subsidiary, Association Life, was a chartered life insurance company that filed annual statements on which it reported its unaccrued CA&H insurance obligations on exhibit 9 and its accrued CA&H insurance obligations on exhibit 11. The Commissioner argued that Association Life had to include its exhibit 11 accrued liabilities (i.e., its accrued unpaid losses) in the denominator of the reserve ratio. The Court of Appeals for the Seventh Circuit thoroughly analyzed the statutory text, the relevant regulations, the administrative history, the case law, and the legislative history and concluded that the reserve ratio's denominator did not include Association Life's exhibit 11 amounts. The court's analysis and conclusion are persuasive, and we follow them in this case.

As further support for our conclusion as to accrued unpaid losses, we turn to the Commissioner's administrative position on accrued liabilities and the reserve ratio for purposes of life insurance; that position is contrary to the position respondent takes here. In Rev. Rul. 72-115, 1972-1 C.B. 200, the Commissioner ruled that unpaid losses on life insurance policies

(namely, present liabilities to pay death benefits to the beneficiaries of insureds who had already died) were excludable from the reserve ratio because they were accrued liabilities. Respondent attempts in his brief to narrow the effect of that ruling in this case:

> Respondent concedes that a diligent reader must carefully parse through the tight language of the ruling to correctly arrive [sic] at its narrow holding. * * * upon close reading, it is evident that the ruling simply holds that reserves for certain unpaid losses arising from life insurance contracts in connection with a death claim benefit are not includible in either the numerator or the denominator of the qualification fraction.

Respondent's attempt is unavailing. Respondent focuses on the fact that the term "unpaid losses" appears in section 816(c)(2), but not section 816(c)(1) or (3), and argues that because the term "unpaid losses" is used only in connection with A&H insurance, the reserve ratio must include accrued obligations with respect to A&H insurance and exclude accrued obligations with respect to life insurance.[9] As the Court of Appeals for the Seventh Circuit stated:

> even if we agree that section 801(c)(2) does not cover unpaid losses on life insurance and can thereby reconcile Revenue Ruling 72-115 with the Service's current position, the reconciliation makes no sense. For if we accept the position of the IRS, then the reserve ratio test would not measure accrued unpaid

---

[9] Respondent ignores the fact that the term "unpaid losses" is also included in sec. 816(a)(2), which does include reference to life insurance policies.

losses on life insurance but would measure accrued unpaid losses on accident and health insurance. The Service is unable to explain why Congress would want to treat accrued unpaid losses on the two kinds of insurance differently. Indeed, the Service concedes that, if anything, Congress thought that accident and health insurance (at least when noncancelable) should be treated just like life insurance. * * * [Harco Holdings, Inc. v. United States, supra at 1034.]

We are also mindful of section 1.801-3(g), Income Tax Regs.,

which provides:

Sec. 1.801-3. Definitions.

this section defines the following terms, which are to be used in determining if a taxpayer is a life insurance company (as defined in section 801(a) and paragraph (b) of this section):

*   *   *   *   *   *   *

(g) Unpaid losses (whether or not ascertained). The term "unpaid losses (whether or not ascertained)" means a reasonable estimate of the amount of the losses (based upon the facts in each case and the company's experience with similar cases)--

(1) Reported and ascertained by the end of the taxable year but where the amount of the loss has not been paid by the end of the taxable year,

(2) Reported by the end of the taxable year but where the amount thereof has not been either ascertained or paid by the end of the taxable year, or

(3) Which have occurred by the end of the taxable year but which have not been reported or paid by the end of the taxable year.

Respondent concedes that these regulations do not distinguish

between accrued and unaccrued unpaid losses on CA&H insurance,

but asserts that the regulations' "broad language certainly includes the accrued unpaid losses at issue herein". We disagree. These regulations have no direct bearing on the issue at hand. In addition to the fact that respondent concedes that they do not contemplate a distinction between accrued and unaccrued losses on CA&H insurance, the regulations were issued one year after Congress added the parenthetical "(whether or not ascertained)" to the Code. See Harco Holdings, Inc. v. United States, supra at 1034-1035.

We hold that Central Life's accrued unpaid losses on CA&H insurance are not unpaid losses under section 816(c)(2), and, hence, that it is a life insurance company for Federal income tax purposes. In so holding, we have carefully considered all arguments by respondent for a contrary holding, and, to the extent not discussed above, find them to be irrelevant or without merit.[10] To reflect the parties' concessions,

> Decision will be entered
>
> under Rule 155.

---

[10] Respondent argued in his reply brief for the first time that United States v. General Dynamics Corp., 481 U.S. 239, 246-247 (1987), may apply to some of Central Life's accrued unpaid losses to deny their deductibility. This argument raises a new issue and does so untimely. Accordingly, we do not consider it. See Palmer v. Commissioner, 62 T.C. 684, 698 (1974), and the cases cited therein, affd. 523 F.2d 1308 (8th Cir. 1975); see also Estate of Horvath v. Commissioner, 59 T.C. 551, 555 (1973).